BERNARD WHITT *v.* STATE OF INDIANA.

[No. 1176S394. Filed April 21, 1977.]

*Richard L. Milan,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *David T. O'Malia,* Deputy Attorney General, for appellee.

DeBruler, J.—Bernard Whitt was convicted of commission of a felony while armed, to-wit: robbery, in violation of Ind. Code § 35-12-1-1 (Burns 1975), and sentenced to twenty years of imprisonment. On appeal he argues that the trial court erred in failing to suppress the identification testimony of three witnesses.

On the night of November 22, 1974, two men entered Sam's Liquor Store in Indianapolis. One carried a sawed-off shotgun, the other a revolver. These men ordered the two store employees, George Duerson and Richard Hunter, and a friend of the employees, Jessie Dawkins, to lie on the floor, and took a cash box and some money from a cash register, about $800.00 total. The witnesses' estimates of the duration of the robbery ranged from "a few seconds" to "three to five minutes." The witnesses were within a few feet of the robbers, and could see their faces. The store was lighted.

A few days after the robbery, Detective George Grant of the Indianapolis Police Department displayed a large number of photographs to witness George Duerson, who was unable to find either of the robbers among the photos.

On May 28, 1975, all three eyewitnesses were shown a group of seven color photographs at police headquarters by Sergeant Clarence Grant. All three selected a photograph of appellant as that of the robber armed with the pistol.

On September 30, 1975, a lineup was conducted at the Marion County Jail. Detective George Grant had requested all three eyewitnesses to view the lineup, but only George

Duerson appeared. Yvonne Watkins, the attorney then representing appellant, was present and observed the procedures employed. Duerson identified appellant and another prisoner as the robbers. (Although the man suspected by the police as the other robber was a participant in the lineup, Duerson did not identify him; the man he identified was generally conceded not to be involved in the robbery and was not charged. Duerson did express some uncertainty about this selection.)

Prior to trial appellant filed a written motion to suppress identification testimony. A hearing was held on the motion, which was then denied. At trial appellant renewed his motion and was allowed to introduce new evidence concerning the pre-trial confrontations; the trial court again overruled the motion. The three eyewitnesses all identified appellant as one of the robbers. Additionally an accomplice, George Wallace Washington, described the robbery and identified appellant as one of the robbers. Appellant presented testimony by Yvonne Watkins as to the circumstances of the lineup, and also presented an alibi defense.

Appellant challenges both the lineup and the May 28th photographic display as being unnecessarily suggestive. His arguments may be summarized, and will be considered, as follows:

(1) The May 28th photographic display was rendered suggestive because the photographs displayed were "mug shots" containing placards with physical descriptions of their subjects, and because appellant's photograph alone contained front and side views.

(2) The lineup was rendered suggestive by comments of the detective and by the witness' seeing a list of the names of the participants.

## I.

Seven photographs were shown to each of the eyewitnesses on May 28, 1975, at police headquarters by Sergeant Grant.

The witnesses were separated while viewing the pictures. The photographs were handed to each witness in a stack, and nothing was said to them while they made their selection. Six of the photographs were Indianapolis Police Department mugshots, each showing a front view of its subject only; each subject wears a placard containing his name, age, height, and weight. The other photograph, that of appellant, was a Birmingham, Alabama, police mugshot, front view and profile, with no name or physical description marked on the photograph. The persons depicted in all seven photographs were fairly young Black men, with no egregious dissimilarities of complexion, facial features, or hair styles. The heights and weights marked on the placards, however, were with one exception, less than six feet tall and 160 pounds weight. The other photograph was of Ricky Lee Vaughn, who at that time was suspected of the murder of an Indianapolis Police officer in a widely publicized case, and whose picture appeared often in Indianapolis newspapers.

Appellant argues that the witnesses could eliminate five of the seven photographs because of disparities in height and weight (the robbers had been described as over six feet tall and weighing 170 pounds), and could eliminate the sixth because his face was well-known. Thus the witnesses were left with one photograph, that of appellant, and the procedure suggested to them that they should select that photograph.

The exhibition of photographs bearing identifying markings to a witness could constitute an unnecessarily suggestive procedure if those markings allow the witness to eliminate all but one of the photographs. However the witnesses all testified that during the May 28th display they did not read the height or weight from the placards, or did not pay attention to them.

Cross-examination by Rick Samek of George Duerson:

"Q. Did you read the placard?
A. Yes, I didn't, I didn't read them as, I didn't read them trying to gain an identification, no, I was looking at the face.

Q. Did you notice how tall each of these individuals were in the pictures?

MR. ROSE: Objection, Your Honor, he already stated he did.

COURT: He stated he did not.

A. I said I did not, I didn't pay any attention to it."

Direct examination of Jessie Dawkins by Rick Samek:

"Q. Did anybody call your attention to the placard hanging around the heads of the rest of these pictures?

A. They never said nothing about them, I never seen them before.

Q. Did you happen to read what was on these placards?

A. No."

Direct examination of Richard Hunter by Merle Rose:

"Q. And isn't it true that when you're looking at that picture, you can't help but look at that placard on his chest?

MR. SAMEK: — Objection —

MR. ROSE: — Answer for the record, he nodded affirmatively —

COURT: — Just a moment, your objection is —

MR. SAMEK: — This is in essence direct examination on the petitioner's motion, I believe that's leading and suggestive and I object to the form of the question.

COURT: Sustained.

Q. Well, did you or did you not when looking at that picture look at the placard too?

A. Yeah, I looked at it.

Q. You saw it and read it, did you not?

A. Uh, huh."

Cross-examination of Richard Hunter by Rick Samek:

"Q. Did you know when you saw these pictures the heights of the individuals?

\* \* \*

A. No."

It therefore appears that the trial court could correctly determine that the exhibition of photographs with the placards

was not so unnecessarily suggestive as to give rise to a substantial likelihood of irreparable misidentification.

Appellant also argues that his photograph was singled out and emphasized by virtue of the fact that it was the only photograph showing front and side views of its subject. We note that the Court of Appeals has recently held that the exhibition of photographs to a witness is not rendered suggestive by the fact that a defendant's photograph is the only one showing two views. *Beacham* v. *State*, (1975) Ind. App., 336 N.E.2d 404. However, we find it unnecessary to resolve this issue. The rule regarding suggestive identification procedures requires suppression only when the confrontation is unnecessarily suggestive. *Stovall* v. *Denno*, (1967) 388 U.S. 293, 302, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199. Sergeant Grant testified that the Indianapolis Police Department had no photograph of appellant on May 28, 1975; appellant had never been arrested in Indianapolis. The photograph obtained from the Birmingham Police, showing two views of appellant, was the only picture available to display to the witnesses. The use of this photograph was not unnecessarily suggestive.

Appellant also seems to argue that the display was unnecessarily suggestive because "mug shot" photographs were used. He attempts to support this position with our language in *Emerson* v. *State*, (1972) 259 Ind. 399, 287 N.E.2d 867:

"Several photographs, preferably not *mug-shot types*, should be displayed to the victim. . . ." (Appellant's emphasis.) 259 Ind. at 403, 287 N.E.2d at 870.

It is better practice for police officers not to use mugshots, or to cover any police identification markings on them if mugshots are used. We have never established, however, a strict rule against the display of such photographs to witnesses. The nature of the photograph is only one factor to be considered. In determining the suggestiveness of photographic displays the courts con-

sider the totality of the circumstances surrounding the display. *Emerson* v. *State, supra.* The photographic display was not unduly suggestive.

## II.

The lineup viewed by Duerson consisted of eight persons. A photograph of the lineup appears in the record. The eight participants are similar in height and complexion; all wear jail clothing, and none have unusually distinctive features.

Appellant does not challenge the composition of the lineup, but argues that remarks by Detective Grant rendered the confrontation unduly suggestive.

Duerson testified at the in-trial suppression hearing that before being taken to the jail he was told by the detective that "both people that was involved in the robbery would be in the lineup." Yvonne Watkins testified in the pre-trial suppression hearing that during the lineup, the participants were numbered from left to right, appellant being number two. Duerson was given a sheet of paper on which to write his choices. He wrote "7" and began to leave, whereupon Detective Grant said, "You've got to have two." Duerson then wrote "2" on the sheet. Detective Grant testified that what he had said was "Have you picked out the two subjects who was involved in the robbery?" and that Duerson answered "Yes" and handed him the sheet.

Following the suppression hearing the trial court found that the lineup procedure was not unduly suggestive, commenting in part:

"There is testimony by Miss Watkins that maybe Detective Grant made some sort of improper inference, but that's only her speculation. There is sufficient testimony by the State that no such suggestion was made by Detective Grant to witness Duerson."

After the in-trial suppression testimony the court held:

"The exact sequence of events, which line-up and where and which photographic displays and where is somewhat in a state of confusion, and considering this all happened a year

ago or so, that is understandable, but I'll note for the record that Mr. Duerson appears to be intelligent and articulate and appears to have had sufficient opportunity to observe the Defendant, that he does have a sufficient independent recollection not to render his identification as being suppressable."

Appellant's argument assumes that Detective Grant made both statements attributed to him by Watkins and Duerson. The trial court, however, clearly found that the detective did not make the suggestive remark "You've got to have two," as Watkins had testified. The trial court's finding is supported by Detective Grant's denial that he made such a remark, and will not be disturbed on appeal.

However we do not perceive that the trial court found that Detective Grant did not tell Duerson that the robbers would be in the lineup. Duerson's testimony in this regard is uncontradicted.[1] The trial court appears to have based its denial of the in-trial suppression motion on Duerson's independent recollection of the robber's appearance. When we review a determination made by consideration of "the totality of the circumstances," as is that of improper suggestion, we consider the evidence favorable to the trial court's decision, and any uncontested evidence favorable to the appellant. *Magley* v. *State,* (1975) 263 Ind. 618, 335 N.E.2d 811. We, therefore, must presume that Detective Grant did tell Duerson that the robbers would be in the lineup. Informing the witness that the guilty party is in the lineup constitutes an impermissibly suggestive procedure. *Sawyer* v. *State,* (1973) 260 Ind. 597, 298 N.E.2d 440; *Hopkins* v. *State,* (1975) 163 Ind. App. 276, 323 N.E.2d 232.

---

1. In the pre-trial hearing Detective Grant was asked by defense counsel:

"Q. . . . In other words, you told him in effect that two people were there that robbed, is—robbed him, is that correct?

A. I asked him had he identified the two subjects. . . ."

The State contends that this passage is a categorical denial by Detective Grant that he ever told Duerson that the robbers were in the lineup. It is taken, however, from testimony rebutting Yvonne Watkins, before Duerson had taken the stand, and is by no means a denial that the detective told Duerson, before the lineup, that the robbers would be in it.

The trial court was nonetheless correct in refusing to suppress the in-court identification testimony if the court could properly find that such testimony was not the product of "irreparable misidentification" caused by the suggestive procedure. *Parker* v. *State*, (1976) 265 Ind. 595, 358 N.E.2d 110:

> "The facts of paramount importance to this question relate to the opportunity of the witness to view the offender at the time of the offense: the duration for which the witness can observe the perpetrator; the distance separating them; the lighting conditions; and circumstances affecting the amount of attention the witness can devote to observing the guilty party." 358 N.E.2d at 112.

Duerson testified that the robbery lasted about one minute, taking place in a lighted liquor store. Appellant stood about two and one-half feet from Duerson, who looked at appellant's face. Appellant was not wearing a mask. Duerson could recall that appellant wore a brown or tan jacket. He described both robbers as being six feet two or three inches in height, and as weighing 165 to 175 pounds. He described appellant's hair as short, and his face as beardless. Duerson testified that there was no doubt in his mind that appellant was one of the robbers. He also testified, however, that he was frightened during the robbery and tended to look at the gun. Six months elapsed between the robbery and the May 28th photo display, another four before the September 30th lineup, and another five before trial commenced February 23, 1976. Thus a total of fifteen months separated the offense from the trial. We also note that the trial court specially found that Duerson appeared "intelligent and articulate."

The factors in this set of circumstances favoring the trial court's refusal to suppress are the close quarters at which the witness observed the robber; the good lighting; the witness' subjective certainty about his identification; and the witness' ability to identify appellant at the photo display. Militating against the ruling are the distraction and emotional distress of being held at gunpoint during the

robbery, and the relatively long period from the time of the offense to the time of the lineup. The one minute duration of the encounter may seem brief, but is within the range of robbery cases in which no irreparable misidentification was found. *C.f. Sawyer* v. *State, supra* (two or three minutes) ; *Emerson* v. *State, supra* ("several" minutes) ; *Johnson* v. *State,* (1972) 257 Ind. 682, 278 N.E.2d 577 (one or two minutes).

The facts presented here do not seem similar to those in *Swope* v. *State,* (1975) 263 Ind. 148, 325 N.E.2d 193, in which a witness was found to have no basis for an identification in court independent from a suggestive showup. That witness saw Swope twice, briefly and indirectly, without being aware that any crime was being committed. The witness "had only a limited opportunity to observe [Swope] and no reason for paying close attention to him." 325 N.E.2d at 198.

These facts more nearly resemble those of *Sawyer, Emerson* and *Johnson.* In *Sawyer* we found significant the facts that the witness stood face-to-face with a robber in a lighted bakery shop for two or three minutes. In *Emerson* we said, in finding an independent source of identification :

> "The robbery took at least several minutes to complete and was a face-to-face confrontation. The robbers wore no masks and performed the holdup during daylight hours." 259 Ind. at 404, 287 N.E.2d at 870.

In *Johnson* the witnesses watched the defendant leave the house into which he had broken, get into his automobile, start it with difficulty, and drive off; one spoke with him from a distance of about ten feet and made mental notes of his features. The confrontation lasted one or two minutes. An independent basis was found.[2]

---

2. *Johnson* dealt with a lineup held in the absence of counsel contrary to *United States* v. *Wade,* (1967) 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149. *Wade* allows subsequent in-court identification if the State proves "by clear and convincing evidence that the in-court identifications were based upon observations of the suspect other than the lineup identification." 388 U.S. at 240, 87 S.Ct. at 1939. As we explained in *Norris* v. *State,* (1976) 265 Ind. 508, 356 N.E.2d 204, an identification which

In view of the similarity of this case to these precedents, we cannot say that the trial court erred in ruling that the witness Duerson's in-court identification was not the product of the suggestion implanted at the lineup and was not subject to suppression.

The conviction is affirmed.

Givan, C.J., Arterburn, Hunter and Prentice, JJ., concur.

NOTE.—Reported at 361 N.E.2d 913.

has an "independent basis" for *Wade* purposes can never be the product of irreparable misidentification caused by suggestive procedures.