LINCOLN LOVE *v.* STATE OF INDIANA.

(No. 1075S265. Filed July 29, 1977.)

*Craig A. Hanson,* of Merrillville, for appellant.

*Theodore L. Sendak,* Attorney General, *Joseph J. Reiswerg,* Deputy Attorney General, for appellee.

PIVARNIK, J.—Appellant was convicted of premeditated and felony first degree murder, Ind. Code § 35-13-4-1(a) (Burns 1975), and robbery, Ind. Code § 35-13-4-6 (Burns 1975). Appellant was indicted and tried jointly with one Leroy Williams and convicted after jury trial. Williams was aquitted of all charges. Appellant was sentenced to life imprisonment and an indeterminate term of ten to twenty-five years. On appeal he raises three issues: (1) the admissibility of eyewitness identification testimony; (2) the propriety of allowing the prosecutor to impeach a State's witness with prior statements, and; (3) sufficiency of the evidence to support his convictions.

The incident in question occurred on July 17, 1974, when two armed men held up the Mill Gate Inn in East Chicago, Indiana. Mrs. Beverly Russell, an employee of the restaurant, was shot and killed during the robbery. At the time of the incident the restaurant was closed and Harry Osterman, a

friend of Mrs. Russell, was the only customer remaining in the restaurant. He was sitting at the counter while she counted the night's receipts, waiting to walk her home. All the other customers and employees had left and the dining area lights had been turned off. Spotlights behind the counter provided dim light throughout the restaurant and good light behind the counter.

We first take up the issue of the admissibility of eye-witness identification testimony of Harry Osterman. Osterman's testimony indicated that two men entered through the unlocked front door and exhibited automatic pistols. One man walked behind Osterman and ordered him into the men's restroom. The other approached Mrs. Russell. Osterman was taken into the restroom, relieved of his money, and told to remain there. He heard two shots; when he exited the restroom the robbers were gone, and he found Mrs. Russell in a stockroom, shot in the head.

Mr. Osterman, from his seat, could see the men as soon as they entered the restaurant. He turned to face the man who approached him. Although his attention was on this robber, he could "get a fairly good side look at the other." In spite of the fact that he was held some of this time in the men's room, Osterman said that he observed each robber for five to ten minutes.

Osterman described both robbers to the police as men in their mid-twenties to early thirties, six feet tall, weighing about 160 pounds, wearing waist-length coats, golf hats, and large sunglasses, which he originally mistook for masks. On July 29, 1974, he was shown a group of mugshots and selected one as one of the robbers. This photograph was of a man named Buggs. Osterman also identified Buggs in a line-up. Three months later, on November 7, 1974, the detectives told Osterman that their investigation revealed that Buggs was not a participant in the robbery. They showed him another group of five or six photos, none of which were of Buggs, telling him that it contained photos of the persons who had

robbed him. Osterman picked photos of appellant and Willians. Several days before trial Osterman was shown four photographs in the prosecutor's office, including those of appellant, Williams, and Buggs.

During an in-trial suppression hearing, defense counsel exhibited a group of photographs to Osterman and requested that he select the robbers' pictures. These photographs are not in the record. Osterman picked two photographs. One of these seems to have been of Buggs. The transcript of this procedure does not convey what transpired with complete clarity. In subsequent testimony it was revealed that Osterman had identified Buggs and Williams from the suppression hearing display. There was evidence also that appellant and Buggs resembled each other to quite some extent.

Osterman testified that he was sure of his in-court identification and that it was based upon his recollection of the night of the crime. He said that he was sure enough that he would "stake his life on it."

The trial court ruled that the November 7th photograph identification procedure was improperly suggestive, but that the witness had an independent basis for his in-court identification of appellant and Williams.

A witness who has been subjected to an unnecessarily suggestive confrontation with the accused may nonetheless identify the accused at trial as the perpetrator of the offense if the pre-trial confrontation has not created a "very substantial likelihood of irreparable misidentification," *Norris* v. *State,* (1976) 265 Ind. 508, 356 N.E. 2d 204, or in other words, if the witness has a basis for his in-court identification independent of the suggestive procedure. *Johnson* v. *State,* (1977) 265 Ind. 689, 359 N.E.2d 525. The factors considered in determining the existence of an independent basis have been set out in several cases, and may be divided into two sets: those dealing with the witness' opportunity to observe the offender, and those relating to the reliability of his recollection of his original observation of the

offender. Specific factors in the first group were enumerated in *Parker* v. *State*, (1976) 265 Ind. 595, 358 N.E.2d 110, 112:

> "The facts of paramount importance to this question relate to the opportunity of the witness to view the offender at the time of the offense; the duration for which the witness can observe the perpetrator; the distance separating them; the lighting conditions; and circumstances affecting the amount of attention the witness can devote to observing the guilty party."

*See also Dillard* v. *State*, (1971) 257 Ind. 282, 289, 274 N.E.2d 387, 389.

Factors in the second group were described in *Swope* v. *State*, (1975) 263 Ind. 148, 157, 325 N.E.2d 193, 197, *quoting United States* v. *Wade*, (1967) 388 U.S. 218, 241, 87 S.Ct. 1926, 1940, 18 L.E.2d 1149, 1165:

> " '[T]he prior opportunity to observe the alleged criminal act, the existence of any discrepancy between any pre-line-up description and the defendant's actual description, any identification prior to lineup of another person, the identification by picture of the defendant prior to the lineup, failure to identify the defendant on a prior occasion, and the lapse of time between the alleged act and the lineup identification. It is also relevant to consider those facts which, despite the absence of counsel, are disclosed concerning the conduct of the lineup.' "

The State bears the burden in the trial court of producing "clear and convincing evidence" of an independent basis, *Swope* v. *State, supra,* at 325 N.E.2d 197, but in reviewing the lower court's finding we do not reweigh the evidence, but look to the evidence most favorable to the trial court and any uncontradicted evidence favorable to the appellant. We accept the trial court's finding if it is supported by sufficient evidence. *Whitt* v. *State,* (1977) 266 Ind. 211, 361 N.E.2d 913.

Witness Osterman indicated that there was sufficient light behind the counter to see someone's face. He also indicated that it was Love who went behind the counter to the decedent. His observation time was between five and ten minutes. The

witness gives much evidence about the actions of the defendants during the encounter in the restaurant. He stated that the photos of the appellant and Buggs looked quite a bit alike, but that in observing the appellant in the courtroom he was certain he was the man who robbed him in company with Williams on the night in question. The trial court and jury had an opportunity to observe the witness and receive and consider his evidence. The trial court's finding was supported by sufficient evidence and there was no error in permitting the in-court testimony of witness Osterman to go to the jury.

The next issue raised by appellant surrounds the testimony by the investigating detectives as to the statement of one Shirley Glover. Glover was a cook at the Mill Gate and an acquaintance of appellant. At trial the prosecution produced a written statement attributed to Glover and signed by her, to the effect that a week before the robbery appellant told her that he wanted to rob the Mill Gate, and that afterwards he admitted to her that he had robbed the restaurant and killed the employee. Miss Glover took the stand, denied making the statement, and claimed she had been coerced into signing it. The state was permitted to introduce her prior inconsistent statements.

Augusto Flores Jr., an East Chicago police officer, testified that he talked to Glover as a possible witness of the death of Russell. Glover had first been contacted by telephone and indicated that she wanted to make a statement. She was advised of her rights, though she was not a suspect and was not in custody. She was free to leave at any time. Flores related the statement given to him by Glover. Glover was never threatened or abused, and she volunteered to go to the police station and make the statement while a man in her house volunteered to watch her child. In the statement she indicated that Love told her he got about a thousand dollars in the robbery, that he carried it out in a garbage can, and that a garbage can was missing from the restaurant the next day. She further told police that a week before, Love came to her house and said he heard she was working at the Mill Gate and

that he had been wanting to stick it up for a long time because he needed some money. Additionally, she said she told her mother she thought Love had robbed the restaurant and had killed Russell because "the bitch wouldn't cooperate." Love asked her to take some of the money and she refused.

It is well settled in Indiana that a party can impeach his own witness during the testimony if that witness is shown to be hostile. In *Rogers* v. *State,* (1974) 262 Ind. 315, 315 N.E.2d 707, a state's witness showed himself to be a hostile witness when, upon being called to the stand, he frequently responded to questions by saying that he did not know or could not remember. This witness previously had been believed by the prosecutor to be an agreeable witness, in view of former formal statements. It was held that because of such contradiction and conflict, it was not an abuse of discretion to allow the prosecutor to read questions and answers from the prior extra-judicial statement, and ask the witness if he had answered in the manner indicated by the statement. Here, the witness Glover exhibited total hostility and denied making the statement and denied knowledge of any of the facts stated therein. The jury in determining the defendant's guilt or innocence must weigh evidence and resolve credibility questions. In this case the jury was required and had an opportunity to choose between believing Shirley Glover or the detective. Therefore, it was proper for the State to impeach her by showing the prior statement she had made.

The third issue raised by appellant, sufficiency of the evidence, is virtually disposed of by the findings in the first two issues above. The testimony of witnesses Osterman and Glover, together with supporting testimony of other witnesses showing the commission of the crime at the time and place alleged, provided sufficient evidence to prove every essential element of the crime charged. Only when the evidence is without conflict and can lead to but one logical conclusion will the decision of the lower court be set aside on the grounds that it was contrary to law. *Keller* v. *State,* (1970) 255 Ind. 16, 262 N.E.2d 383; *Asher* v. *State,*

(1969) 253 Ind. 25, 244 N.E.2d 89. It is a well-established rule of law that any inferences drawn by the jury or trier of fact are conclusive on appeal, if reasonably drawn from premises proved by evidentiary support of the material allegations. This court will not weigh the evidence or resolve questions of credibility of witnesses, but will look to that evidence most favorable to the state together with all logical and reasonable inferences that can be drawn therefrom. The conviction will be affirmed if from that viewpoint there is substantial evidence of probative value from which the trier of fact could reasonably infer that the defendant was guilty beyond a reasonable doubt of the crime of which he was convicted. *Blackburn* v. *State,* (1973) 260 Ind. 5, 291 N.E.2d 686; *Riner* v. *State,* (1972) 258 Ind. 428, 281 N.E.2d 815, *rehearing denied; Buise* v. *State,* (1972) 258 Ind. 321, 281 N.E.2d 93.

The trial court is affirmed in all specifications.

Givan, C.J., Hunter, J., concur.

DeBruler J., dissents with opinion in which Prentice, J., concurs.

### DISSENTING OPINION

DEBRULER, J.—I dissent from the majority holding that the witness Harry Osterman was properly allowed to identify appellant during trial. On appeal it is undisputed that the witness was subjected to an impermissibly suggestive photographic display. After the witness had identified one Buggs, whom the police did not believe to be involved in the robbery, *both from photographs and from a corporeal line-up,* the police conducted the November 7 photographic display, described in the majority opinion, which was conceded at trial to be improper. Thereafter, within a week of trial, Osterman was shown photographs by the prosecutor. The majority correctly observes that the witness might nonetheless properly identify appellant at trial if the basis of the in-court identification is independent of the suggestive display. The majority is also correct in noting that two groups of factors are considered in determining whether an independent basis exists:

those generally relating to the witness' opportunity to observe the offender, and those relating to the reliability of his recollection. But having recited the correct rule the majority fails to apply it.

Mr. Osterman's "opportunity to observe" the robbers was less than optimal. He testified that both men wore "golf hats" and sunglasses so large that he at first took them to be masks. One robber held a gun on Osterman, the other, whom Osterman identified as appellant, covered Mrs. Russell. The witness testified that his attention was naturally focused on the man holding him at gunpoint. His chief view of the other gunman was from the side. Thus the witness viewed the offender from the side, while the latter's features were obscured by hat and sunglasses, and while the witness' attention was distracted.

The "reliability of recollection" evidence was even less favorable. The witness gave police fairly extensive descriptions of the gunman, but these descriptions were similar to each other and to his description of a customer who left shortly before the robbery. There is nothing in the record to indicate whether appellant and his co-defendant Williams were similar in appearance. More significant is Osterman's misidentification of Buggs within two weeks of the crime, both by photograph and in person. Also critical is Osterman's inability to select appellant's photograph during the in-trial suppression hearing, despite his being shown photographs of appellant, Williams, and Buggs in the prosecutor's office less than a week before. In *Whitt* v. *State*, (1977) 266 Ind. 211, 361 N.E.2d 913, and *Parker* v. *State*, (1976) 265 Ind. 595, 358 N.E.2d 110, this Court reviewed numerous cases in which "independent bases" were found. In none of those cases was such confusion on the part of the witness shown, and this Court has never found an "independent basis" for an in-court identification under circumstances such as these.

I agree that in reviewing the trial court's finding of an independent basis for the in-court identification we should defer to the trial court's superior opportunity to receive and consider the evidence; that superiority is marked in this case

because of the confusion of the record of the suppression hearing photographic display. But the trial court could not reasonably find "clear and convincing evidence" of an independent basis for the in-court identification, as required by *Swope* v. *State,* (1975) 263 Ind. 148, 325 N.E.2d 193.

The ban against suggestive identification procedures is, for obvious reasons, imposed by the "fundamental fairness" requirements of the due process clause. *Stovall* v. *Denno,* (1967) 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199. The protection which this rule affords defendants against identification testimony implanted in the mind of a witness by improper suggestion would be hollow indeed if an independent basis were found in this case. The rule is grounded in the difficulties inherent in recognition and identification of one person by another. If a brief exposure to the offender were sufficient to produce an unquestionably reliable image in the witness' mind, there would be no danger of suggestion and no reason for the *Stovall* rule. Since we do recognize the danger of influencing a witness' identification by suggestive confrontation, we must require something more than a minimally adequate opportunity to observe the offender as the "independent basis." Otherwise the exception will swallow the rule, and the prohibition against suggestive confrontations will be meaningless.

Prentice, J., concurs.

NOTE.—Reported at 365 N.E.2d 771.