William KUSLEY, Jr., Appellant,

v.

STATE of Indiana, Appellee.

No. 1080S389.

Supreme Court of Indiana.

March 24, 1982.

Harriette Bailey Conn, Public Defender, Indianapolis, W. Brent Gill, Sp. Asst., Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Janis L. Summers, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

On May 2, 1980, appellant Kusley was convicted of attempted murder and sentenced to forty (40) years imprisonment after a trial by jury in the Tippecanoe Circuit Court. He appeals, alleging the court erred in permitting an in-court identification, in overruling his motion for pre-trial line-up, and in sentencing.

On February 25, 1979, at approximately 1:00 a. m., Ronald D. Matthews, a Deputy

Town Marshall of Monon, Indiana, had parked his squad car in front of the residence of Marshall John Raines. He was walking toward the front door when he saw a red pick-up truck travelling at a high rate of speed. Then a black pick-up truck turned onto Madison Street and drove slowly to the end of the street. It turned around, drove slowly back toward Matthews and stopped in front of the Raines' residence. The driver of the black pick-up truck honked the horn and rolled down the passenger window. Matthews approached the passenger-side door and was shot in the left side of the face with a sawed-off shotgun. The blast knocked Matthews off his feet. He arose, however, and fired four shots at the pick-up as it sped off. Raines came out of his house in time to see the vehicle departing. Raines helped Matthews into the house and rendered first aid with the assistance of his wife. He then radioed a report of the incident, briefly tried to find the black pick-up and returned home to assist his wife.

At approximately 1:30 a. m., Billy Biggs, an officer with the Kouts, Indiana, police department, observed a black pick-up truck matching the radio description travelling northbound on State Road 49 at about five miles per hour with no lights on. Officer Biggs fell in behind the vehicle, radioed in his observation and pulled the truck over. Biggs advised the driver over the loudspeaker to exit the vehicle. The driver opened the door and placed one foot on the ground. Biggs twice more advised the driver to exit, but he closed the door and made an obscene gesture with his middle finger and sped off. Biggs gave pursuit and was joined by Kouts Town Marshal Randall Walden. They chased the vehicle for approximately six miles before Walden was able to ram the pick-up truck and stop it. Biggs and Walden exited their vehicles and Walden fired a warning shot. The driver then fell to the seat and started kicking the right-side of the windshield. Walden pulled the driver out and after a struggle, put the driver in the back seat of the squad car.

A search of the truck revealed a spent shotgun shell, a pair of rubber gloves, a pair of black gloves and other items. A sawed off shotgun was discovered along the chase route. The driver of the pick-up, the appellant, was transported to the Kouts Town Hall. While in custody, appellant made three remarks and otherwise would not communicate with police. The black pick-up truck was owned by Roger Dale Siko. He had let the appellant use it the evening of February 24, 1979.

I.

Appellant argues that the court erred in permitting an in-court identification. Appellant had filed a motion to suppress and a memorandum in support thereof prior to trial requesting the suppression of evidence pertaining to Matthews' photographic identification of appellant and any in-court identification of the appellant by Matthews. The court ordered the evidence of the photographic identification suppressed. Two days after the shooting, the victim had been shown nine photos, including three of the defendant, three of another subject and three of other persons. One of the photos of the defendant bore the arrest date, February 25, 1979, the day of the shooting. However, the court ruled that the photographic identification was not so impermissibly suggestive as to preclude an in-court identification by Matthews and that an independent basis for such an in-court identification existed.

Kusley claims that the photographic identification tainted the in-court identification and argues that Matthews did not have an independent basis for his identification.

■ An in-court identification is permissible, in spite of a prejudicial pretrial identification, if an independent basis for the in-court statement exists. *Swope v. State,* (1975) 263 Ind. 148, 157, 325 N.E.2d 193, 197 cert. den. 423 U.S. 870, 96 S.Ct. 135, 46 L.Ed.2d 100; *Eckman v. State,* (1979) Ind. App., 386 N.E.2d 956. The independent ba-

sis for the in-court identification must not be a product of unnecessarily suggestive confrontation and must not lead to an irreparable likelihood that the identification will be erroneous, denying due process. *Porter v. State*, (1979) Ind., 397 N.E.2d 269; *Williams v. State*, (1979) Ind., 395 N.E.2d 239.

On review the court will look to the totality of circumstances presented to determine if such an independent basis exists. The opportunity the witness had to observe the perpetrator, the lighting conditions, the witness' distance from the person being observed, the witness' capacity to observe and similar factors may all be considered. *Young v. State*, (1979) Ind., 395 N.E.2d 772; *Aker v. State*, (1980) Ind.App., 403 N.E.2d 847.

Here Matthews was standing on the lawn on the west side of Madison Street at the corner of State Road Sixteen when the black truck drove by heading north at about five miles per hour. Thus Matthews would have had a view of the driver's side of the truck. A street light was just across the state road, another at the Town Marshall's garage and a porch light was lit on Raines' doorstep. Matthews continued to watch the truck and stated he saw the driver's features and that he had "shoulder length hair, a full beard, navy blue sock hat, wasn't wearing glasses, was average height." Record at 278. The truck then drove to the end of the street, turned around and came back, stopping in the middle of the street before Raines' house. Matthews could see the driver as Matthews walked to the truck. He moved to the passenger side door, the driver leaned toward him and shot. Matthews was about twelve to seventeen feet from the man who shot him. He described the black truck clearly. The street lights were from twenty to fifty-five feet away and the dash lights were on in the truck. Therefore, we believe that there was sufficient evidence to support the trial court's finding that the victim's in-court identification of appellant

had a basis independent from the suggestive pretrial procedure. *Borden v. State*, (1980) Ind., 400 N.E.2d 1368; *Love v. State*, (1977) 266 Ind. 577, 580–81, 365 N.E.2d 771, 773.

## II.

Kusley next argues that he should have been granted a pretrial line-up, although he admits that no authority in Indiana law exists in support of his position. This claim is apparently an attempt to suggest that there was an issue of mistaken identity or that there was some kind of exculpatory evidence available through a physical line-up that was denied to him. There is no evidence presented that there was any such mistaken identity or that there was any exculpatory evidence available to the State that was not revealed by them. The victim, Matthews, testified at trial and the defendant had an opportunity to confront and to question him regarding his identification of Kusley. Discovery in criminal cases is largely a matter within the discretion of the trial court. *Ross v. State*, Ind., 413 N.E.2d 252, 256; *Gutierrez v. State*, (1979) Ind., 395 N.E.2d 218, 223. There has been no showing that the failure to require a line-up prejudiced the appellant. There is no error on this issue.

## III.

Appellant finally alleges that the trial judge did not sufficiently state his reasons for imposing a forty-year sentence on the conviction for attempted murder, rather than a thirty-year term. When additional years of imprisonment are imposed, the trial court must state the factors he considered in determining the sentence. *Abercrombie v. State*, (1981) Ind., 417 N.E.2d 316.

The trial court here considered the defendant's history of relatively minor criminal activity and noted the hardship created by such a long imprisonment. However, he also stated that the offense

was particularly vicious and "amounted to lying in wait to try to kill a law enforcement officer with what the Court considers a total absence of any reason." He again noted the seriousness of the offense and sentenced Kusley to a term of forty years. Therefore, the record does not support appellant's claim that the trial judge did not state his reasons for increasing the sentence, and it is apparent that the increase of ten years was a reasonable one considering his findings.

Judgment affirmed.

All Justices concur.