Curtis TAYLOR, Kenneth King,
Appellants,

v.

STATE of Indiana, Appellee.

No. 782S260.

Supreme Court of Indiana.

Oct. 22, 1984.

⚷═392(2)

Richard D. Gilroy, Indianapolis, for appellant Taylor.

Nancy L. Broyles, McClure, McClure & Kammen, Marcus C. Emery, Steers, Sullivan, McNamar & Rogers, Indianapolis, for appellants.

Linley E. Pearson, Atty. Gen., John D. Shuman, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendants-Appellants Curtis Taylor and Kenneth King were jointly tried by a jury in the Marion Superior Court, Criminal Division 2, for the crime of murder. They were found guilty. Curtis Taylor was sentenced to a term of fifty years and Kenneth King was sentenced to a term of forty years. Although we consider their appeals together, each of them has filed separate briefs. The issues presented for our consideration in these appeals are as follows:

1. denial of Appellant Taylor's motion for separate trial;

2. impeachment testimony of witness Lisa Spain;

3. alleged hearsay testimony of witness Crenshaw;

4. sufficiency of the evidence;

5. the giving by the trial court of its final instruction 9, regarding flight; and

6. denial of Appellant Taylor's motion to correct errors without an evidentiary hearing.

On the evening of August 21, 1981, Appellants Curtis Taylor and Kenneth King approached a "crap" game in progress on the front porch of an uninhabited apartment house in the 600 block of Haugh Street in Indianapolis. Both Taylor and King displayed pistols and Taylor said: "All right, y'all know what this is." All of the participants in the game except the

victim then stood up and threw down their money. The victim remained kneeling and reached into his pockets whereupon both Appellants opened fire on him. As the victim bent over to reach into his pocket, King shot the victim point blank in the top of the head. The victim died as a result of the shooting, suffering five gunshot wounds. Four slugs were removed from his body during the autopsy. It was determined that Appellant King fired two of these slugs with a pistol that was subsequently given to his brother and then sold. The gun was identified by an eyewitness as the pistol King had used to shoot the victim. Two other slugs recovered from the victim's body were not fired from the pistol King was firing. Steven Mayberry was with both Appellants but did not take part in the incident. Mayberry and the two Appellants fled the scene but Mayberry was apprehended by the police shortly thereafter. He testified for the State, relating the events as we have set them out above. One Bruce Palmer, a nearby resident, observed three black men arrive in a green Cadillac and park it in an empty lot behind his house. He then heard shots and saw the three running back toward the automobile. One of them got into the automobile and drove away almost striking one of the others. The other two then fled on foot. Palmer was able to get a license number of the automobile and gave it to the police.

## I

Prior to trial, Appellant Curtis Taylor moved for a separate trial pursuant to Ind.Code § 35–3.1–1–11 (Burns 1979) [repealed effective September 1, 1982] on grounds that extra-judicial statements made by co-defendant Kenneth King would implicate Taylor. The State responded that any statements made by King would not implicate Taylor and the motion for separation was denied by the trial court. Taylor admits that severance of defendants is within the sound discretion of the trial court and is reviewed only where there is a showing of abusive discretion. *Hodge v. State*, (1982) Ind., 442 N.E.2d 1006; *Crenshaw v. State*, (1982) Ind., 439 N.E.2d 620.

Appellant also recognizes that when a court improperly admits out of court statements of co-defendants and there is other evidence against him that is so strong that a jury could have come to no other conclusion, such admissions are considered harmless error. *Carter v. State*, (1977) 266 Ind. 140, 361 N.E.2d 145, *cert. denied* 434 U.S. 866, 98 S.Ct. 202, 54 L.Ed.2d 142. Taylor claims the trial court erred by denying his motion for separation and by subsequently permitting testimony of Ernest King, an uncle of co-defendant Kenneth King, thereby prejudicing Taylor since co-defendant Kenneth King did not subsequently testify. He relies upon Ind.Code § 35–3.1–1–11; *Bruton v. United States*, (1968) 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476; and *McChristian v. State*, (1979) 272 Ind. 57, 396 N.E.2d 356.

Ernest King testified that he talked to Kenneth King on three separate occasions after the robbery and murder. On the first occasion, Curtis Taylor was not present. Curtis Taylor was present during the second and third conversations. Ernest King testified that in the first conversation, Kenneth King told him that he, Kenneth King, had shot the victim. He also made the statement: "We wuz robbing the crap game." The trial court ordered during the testimony of that first conversation that the witness could not testify as to what Kenneth King stated Curtis Taylor did. With regard to the second conversation, witness Ernest King testified that King and Taylor were both present. In the second conversation, Ernest King again stated that he was the one who shot the victim. Taylor then spoke in the second conversation and stated to Ernest King that he, Taylor, was with Kenneth King during the robbery and murder. In the third conversation both King and Taylor were again present. Kenneth King again stated that he, Kenneth King, shot the victim.

The trial court found that the testimony of Ernest King as to the second and third conversations were not hearsay since Taylor was present and, in fact, spoke,

admitting he was involved in the second conversation. He did not permit the witness to state what Kenneth King said about Ernest King. We do not find reversible error in the admission of any of this testimony. In the first place, no objections were made to the admission of any of Ernest King's testimony nor was there any motion to strike or admonish the jury. Taylor has therefore waived the issue on appeal. Furthermore, since Taylor was present during the second conversation and, in fact, admitted to Ernest King that he was present, this testimony was admissible and cumulative. Admission of the third statement was proper since Taylor was not mentioned. *Wickliffe v. State*, (1981) Ind., 424 N.E.2d 1007. In view of all of these circumstances, we see no error in the admission of the testimony by the trial judge. Admission or exclusion of cumulative evidence is within the sound discretion of the trial court. *Chambers v. State*, (1981) Ind., 422 N.E.2d 1198, *reh. denied.* Furthermore, Taylor was obliged to object to the evidence when it was actually presented to the jury and could not rely on the pretrial ruling of the court as to the admissibility of the evidence. *Pointon v. State*, (1978) 267 Ind. 624, 372 N.E.2d 1159.

## II

Lisa Spain was the sister of Curtis Taylor and a friend of Kenneth King. Prior to the time of this trial, she had pleaded guilty to a charge of assisting a criminal but had not yet been sentenced. She had given a statement to the police in which she told of certain statements made to her by Taylor in which he admitted taking part in the shooting of the victim and had also seen a gun in Taylor's possession which he admitted using at the time. She also assisted Taylor in leaving the area and attempting to escape prosecution. At the time of the trial, however, she would not cooperate with the State and refused to testify against Taylor. She made various claims about her previous statement to the police including, *inter alia*, that she did not make such statements, that she forgot what she said, or that she was threatened

by the police and forced to say them. The State then advised the trial court and Appellants that they intended to call Lisa Spain and impeach her pursuant to Ind. Code § 34-1-14-15 (Burns 1973), which provides:

"The party producing a witness shall not be allowed to impeach his credit by evidence of bad character, unless it was indispensable that the party should produce him, or in case of manifest surprise, when the party shall have this right; but he may, in all cases, contradict him by other evidence, and by showing that he has made statements different from his present testimony."

The State in a criminal prosecution may utilize this statute against one of its own witnesses when the witness has given a prior inconsistent statement. *Adams v. State*, (1974) 262 Ind. 220, 314 N.E.2d 53. The proper foundation for a showing of a prior inconsistent statement is to show the date and place of the prior inconsistent statement and the person to whom it was addressed. *Lewis v. State*, (1983) Ind., 451 N.E.2d 50; *Smith v. State*, (1981) Ind., 414 N.E.2d 299. The procedure followed by the State and permitted by the trial court here was to ask the witness if she had made certain statements to the police at a given time and place and have her answer by denying that she did so or by denying that they were true while claiming she was forced to give them. Officer Crenshaw who took the statement was then allowed to testify that she did, in fact, make such statements at the given time and place. He used a written transcription of the statement given by the witness. When Appellant Taylor objected that the police officer was reading from the statement, the trial court sustained the objection and advised Officer Crenshaw that he could use the statement to refresh his recollection if he could not remember in detail the question and answer given to the witness and answered by her. Appellant Taylor's primary objection seems to be that the proper procedure for impeaching the witness was to place into evidence the tran-

scribed statement made previously by her and not to have a witness testify as to its content. He cites us to no authority, however, for this proposition nor makes any cogent argument why the procedure followed here was improper. The entire statement of witness Spain was not put into evidence by Officer Crenshaw. Crenshaw responded only to several questions contained in the statement and denied by Lisa Spain on the stand. There was thus no need or requirement that the entire transcript of the statement be put into evidence. Furthermore, Appellant Taylor did not move that the entire statement be put into evidence inasmuch as there was testimony on a portion of it. Appellant Taylor cites *LaBine v. State*, (1983) Ind., 447 N.E.2d 592. The witness in that case refused to testify, claiming first, Fifth Amendment protection, and failing there, totally refused to reply or to admit memory on any point. The holding in *LaBine* then was that it was not proper to have testimony on the witness' prior statement since the witness was not available for cross-examination. There is no such showing here as Spain did testify and there was no showing she was not available to be recalled for cross-examination. In fact, the State stated that she was in the community and could be produced if desired. *See Patterson v. State*, (1975) 263 Ind. 55, 324 N.E.2d 482. We therefore see no error on this issue.

### III

■ Appellant Kenneth King claims the trial court erred in permitting Officer Crenshaw to testify concerning a license number given to Crenshaw by witness Bruce Palmer. Bruce Palmer had testified previously and had stated that he took down a license number from the automobile used by Appellants and had given this written number to Officer Crenshaw. Palmer did not testify, however, as to what that number was. When Crenshaw testified, he corroborated Palmer's testimony that he had received this written license plate number from Palmer at the scene of the crime and then was permitted to state what that num-

ber was. Appellant King now claims it was reversible error to permit the officer to so testify since his statement about the number was hearsay. We first note that even though the giving of the number was hearsay, it was of little probative value and in fact was merely cumulative of other properly admitted and unrefuted testimony which clearly established the identity of Appellants as the perpetrators of this murder. We fail to find reversible error on this issue.

### IV

Appellant Taylor claims the evidence was not sufficient to support the verdict of the jury finding him guilty of murder. Our standard of review on such a claim has been so often stated that it need not be repeated verbatim here. *See generally Hodge, supra.*

■ There was more than sufficient evidence here from which the jury could find or infer that Curtis Taylor was guilty of murder. The State is accurate in its contention that the testimony of witness Mayberry alone is sufficient to sustain the conviction. Mayberry testified that both defendants shot at the victim at point blank while they were robbing a dice game. Slugs from two different guns were recovered from the victim's body after he died from the gunshot wounds.

### V

■ Appellant King claims the trial court erred in giving its final instruction No. 9 which advised the jury they could consider evidence, if any, of flight of the accused as showing consciousness of guilt along with all the other evidence in the case. King claims there was not sufficient evidence of flight on his part to justify the instruction. There was evidence that Taylor had left the jurisdiction but King had not. It is proper, however, to give the instruction on flight when evidence of flight has been adduced at the trial. *Williamson v. State*, (1982) Ind., 436 N.E.2d 90. Furthermore, flight from the scene of

the crime is sufficient to warrant the instruction. *Lindley v. State*, (1981) Ind., 426 N.E.2d 398. Witness Bruce Palmer testified that King, Taylor, and Mayberry all fled the scene after the shooting. King's reliance on *Finger v. State*, (1973) 260 Ind. 524, 297 N.E.2d 819, does not support him here. The testimony concerning the departure of all of the perpetrators, including King, was indicative of hurried flight and not merely an "innocent exit." The instruction was properly given.

## VI

Finally, Appellant Taylor claims that the trial court committed reversible error by denying his motion to correct errors without giving him a hearing. His claim is directed to Specification 20 in his motion to correct errors which alleges that the State failed to provide him with information available to the State regarding the fact that Mayberry had been taken into custody and questioned a number of times about the subject of his testimony before Appellant's trial and after the instant crime. Taylor claims that this evidence would have exculpated him and should have been given to him in time for him to use it in his defense. He specifically states that he did not become aware of this information until after his trial.

The trial court denied Appellant Taylor's motion to correct errors without a hearing. The State correctly points out that Specification 20 in Taylor's motion to correct errors required consideration of matters outside the record and therefore must have been averred by an affidavit attached to the motion. Ind.R.Tr.P. 59(H)(1) [incorporated by Ind.R.Crim.P. 16]. In the absence of such affidavits, the issue was never properly before the trial court or this Court and may not be the basis for a reversal. *Pettit v. State*, (1979) 272 Ind. 143, 396 N.E.2d 126. Accordingly, there was nothing before the trial court in Taylor's motion to correct errors other than his bare assertion that Mayberry had been arrested repeatedly and threatened by police

prior to his testimony. There is no issue presented here which requires reversal.

Finding no error, we affirm the trial court in all things.

GIVAN, C.J., and DeBRULER, HUNTER and PRENTICE, JJ., concur.