David B. ADAMS, Appellant (Defendant Below),

v.

STATE of Indiana, Appellee (Plaintiff Below).

No. 2–385A69.

Court of Appeals of Indiana, Third District.

March 19, 1986.

Michael R. Withers, Anderson, for appellant.

Linley E. Pearson, Atty. Gen., Richard C. Webster, Deputy Atty. Gen., Indianapolis, for appellee.

HOFFMAN, Judge.

Defendant-appellant David B. Adams appeals his convictions for robbery,[1] and conspiracy to commit robbery.[2]

The evidence pertinent to this appeal discloses that on April 10, 1984, at approximately 1:15 A.M., an employee of the Bake-Mart in Madison County, Indiana, was robbed at gunpoint. The employee, Donald Dante Thornbury, was the only clerk on duty at the time. While Thornbury was working, he noticed a man come in the store and walk up and down several aisles. The man proceeded to the cash register with several items. Thornbury rang up the items, and looked down at the cash register to press the total button. When Thornbury looked up, the person had a gun aimed at Thornbury's face and said, "Gimme your money."

At the robber's request, Thornbury gave him the cash drawer. After taking the money, the robber directed Thornbury to sit on the floor until he had gone.

While the gun was pointed at Thornbury, a second person walked into the store and stood behind the man with the gun. The second person appeared nervous. Both men left at approximately the same time, running out the front door of the Bake-Mart.

---

1. IND. CODE § 35–42–5–1.

2. IND. CODE § 35–41–5–2.

A patron of the tavern across the street, Patrick Robertson, saw two men running toward him from the direction of the Bake-Mart. As one of the men ran past Robertson, he stuck something in his face and told him to "get down." Robertson did not see their faces. The men ran to a truck parked nearby, and left. Robertson recorded the license plate number.

Later that morning Samuel Hanna, an officer with the Madison County Police, checked the registration of the truck and determined that the truck was registered to David Taylor,[3] at 615 Louise Street, Anderson, Indiana. The truck was parked outside of the house at that address, which was the residence of David Adams. Adams was taken into custody, because he matched the description of one of the men who had robbed the Bake-Mart.

At the Madison County Jail, Adams agreed to have a Polaroid picture taken of him. Hanna inserted the picture into a book containing numerous other pictures. Hanna then called Thornbury's residence and requested that Thornbury come to the jail to look at some photographs.

After looking through the pictures twice, Thornbury tentatively identified Adams as the gunman. Thornbury told Hanna that the picture was not very good and that he would like to see the man in person. Hanna brought Adams downstairs, past a glass window from which Thornbury could view Adams. Adams was then brought past the window a second time. Thornbury then walked out into the hallway and observed Adams standing at the top of the stairs. Thornbury then positively identified Adams as the man with the gun.

At trial Thornbury again identified Adams as the gunman, even though one of Adams' co-defendants testified that he robbed the store and that Adams neither knew about nor participated in the robbery. The jury convicted Adams of both the robbery and the conspiracy charges.

On appeal, Adams presents seven issues for review. As restated, the issues are:

3. David Taylor was a co-defendant at the trial.

(1) whether the trial court erred in denying Adams' request for a trial separate from the two co-defendants;

(2) whether the trial court erred in denying Adams' motion to suppress the out-of-court and the in-court identification of Adams by Thornbury;

(3) whether Thornbury's indication to a probation officer that the man who held the gun during the robbery threatened him in court, constituted newly discovered evidence requiring a new trial; in that an attorney attested in an affidavit that a co-defendant made remarks to Thornbury during the trial;

(4) whether the trial court erred in ordering Adams to comply with the State's discovery request;

(5) whether the trial court erred in refusing to allow Adams' witness, Steve Tanner, to testify;

(6) whether one juror's admission that he had determined Adams' guilt prior to final argument, constituted juror misconduct requiring a new trial; and

(7) whether sufficient evidence supported the jury's verdict of guilt on both the robbery and the conspiracy charges.

First, Adams challenges the trial court's denial of his request for a separate trial. Adams contends that he was prejudiced by the co-defendants' criminal records and evidence of other criminal activity in which they engaged on the same day. IND. CODE § 35–34–1–11(b) states in pertinent part:

"In all other cases, upon motion of the defendant or the prosecutor, the court shall order a separate trial of defendants whenever the court determines that a separate trial is necessary to protect a defendant's right to a speedy trial or is appropriate to promote a fair determination of the guilt or innocence of a defendant."

The decision whether to grant a motion for separate trials lies within the discretion of the trial court. *Averhart v. State* (1984), Ind., 470 N.E.2d 666, 680, *cert. denied,* — U.S. —, 105 S.Ct. 2051, 85 L.Ed.2d 323 (1985). On appeal, this Court is limited to a review for an abuse of discretion. *Taylor v. State* (1984), Ind., 469 N.E.2d 735, 737. The risk of prejudice often concerns admission at trial of extrajudicial statements by co-defendants. *See e.g. Taylor, supra; see also,* IND. CODE § 35–34–1–11.

■ In the present case Adams' co-defendant testified that Adams had not participated in and knew nothing of the robbery. Adams does not complain that any extra-judicial statements by co-defendants were introduced. While evidence of other crimes committed by Adams' co-defendants was presented to the jury, Adams was not implicated in any other criminal activity and no evidence of his prior criminal record was admitted. Thus, Adams was not damaged by any extra-judicial statement and the only in-court testimony by a co-defendant was favorable to Adams.

Further, the possibility that one defendant may be found guilty by association does not require a separate trial where the evidence demonstrates distinctive roles and acts by the defendants. *Johnson v. State* (1981), Ind.App., 423 N.E.2d 623, 629. The trial court did not abuse its discretion in denying Adams' motion for a separate trial.

Adams' second issue questions the propriety of Thornbury's out-of-court and in-court identification of Adams as the gunman. Notwithstanding an unnecessarily suggestive pre-trial confrontation between a witness and the accused, the witness may offer identification testimony at trial if based upon observation independent of the suggestive procedure. *Love v. State* (1977), 266 Ind. 577, 580, 365 N.E.2d 771, 773. Some of the factors to consider when determining whether an independent basis exists are: opportunity to view the offender; duration of the observation; distance between witness and the offender; lighting conditions; and circumstances affecting the witness' attention. *Love, supra.*

■ Thornbury testified that at the time of the offense, he had an opportunity to view the offender for approximately three minutes from a distance of one and one half feet. Thornbury admitted to being scared, but stated that he was able to look from the gun to the robber's face. The lighting was reported to be better than that in the courtroom. Thornbury's opportunity to observe the offender provided an independent basis for his in-court identification of Adams as the gunman.

Similarly, Adams' third issue calls into question Thornbury's identification of Adams as the gunman. At Adams' sentencing hearing, a probation officer, who interviewed Thornbury for a pre-sentence report, testified that Thornbury claimed to have been threatened in court by the robber who held the gun. The attorney for one of Adams' co-defendants stated in an affidavit that his client mumbled something to Thornbury during the trial. Adams contends that this constitutes newly discovered evidence entitling him to a new trial.

Prior to awarding a new trial on the basis of newly discovered evidence, the defendant must establish that the evidence through due diligence was not discoverable before trial, that it is material, relevant and not cumulative, that it is not merely impeaching, that it is not privileged or incompetent, that it is worthy of credit, that it can be produced at a retrial, and that it will probably produce a different result. *Johnson v. State* (1984), Ind., 464 N.E.2d 1309, 1311. Motions for a new trial based upon newly discovered evidence, are viewed with disfavor and will be reversed only for a showing of abuse of discretion. *Walker v. State* (1983), Ind.App., 454 N.E.2d 425.

■ The evidence, if produced at a retrial, would be used to impeach Thornbury's testimony that Adams was the gunman in the robbery. Additionally, it is unclear as to which defendant Thornbury was referring because he did not state a

defendant by name. The trial court did not abuse its discretion in denying a new trial.

■ Under his fourth issue, Adams complains that the trial court's order requiring him to make certain disclosures in discovery, denied him the right to refuse to testify.[4] In a criminal prosecution the trial court has broad discretion regarding discovery matters. *Kalady v. State* (1984), Ind., 462 N.E.2d 1299, 1311. The trial court's discovery orders will not be reversed absent an abuse of discretion. *Taylor v. State* (1984), Ind., 468 N.E.2d 1378.

On appeal Adams specifically objects to the trial court's order requiring disclosure of defense witnesses, along with a summary of their testimony, and any defenses to be used at trial. The order contained the limitation that work product material was not subject to disclosure.

Adams complied with discovery by listing possible witnesses and stating that the State could not prove him guilty beyond a reasonable doubt. Adams also stated that he had no conversations with the co-defendants regarding the robbery and that he was not present at the time the offense was committed.

The court may order a list of witnesses. *See, Partlow v. State* (1983), Ind., 453 N.E.2d 259, *cert. denied,* 464 U.S. 1072, 104 S.Ct. 983, 79 L.Ed.2d 219 (1984). No question is presented as to statements of witnesses because Adams did not disclose any statements. Moreover, the answers to discovery given by Adams did not extend into work product or infringe upon his right not to testify at trial. No error occurred.

■ The fifth issue presented questions the trial court's ruling disallowing testimony by Steve Tanner, a witness called by Adams. Tanner was Adams' supervisor at his place of employment. Tanner's testimony would have been in the nature of character testimony, and would have placed

Adams at work approximately ten hours prior to the robbery.

Reception of evidence is within the sound discretion of the trial court, and its decision may be reversed only for an abuse of discretion. *Chambliss v. State* (1983), Ind. App., 454 N.E.2d 90. Evidence of a person's character is usually not admissible to establish that the person acted in a like manner on a particular occasion. *Chapman v. State* (1984), Ind.App., 469 N.E.2d 50, 52. The court did not abuse its discretion in refusing to allow Tanner to testify.

■ Adams' sixth issue alleges juror misconduct based upon a juror's statement, after the verdicts were returned, that he had determined Adams' guilt prior to final arguments. Because final instructions were given after final arguments, the juror had made up his mind prior to hearing the instructions as well. Adams' attorney attested that he heard the juror make the statement. While the conduct of the juror cannot be condoned, and was admonished against by the court,[5] a new trial cannot be granted under the circumstances.

It is fundamental that jurors may not impeach their verdict through affidavits. *Stader v. State* (1983), Ind.App., 453 N.E.2d 1032, 1035. The attorney's affidavit is merely an attempt to indirectly accomplish that which could not be done directly. At issue is a statement by a juror, to which the juror could not attest, in order to impeach the verdict. Likewise, the attorney's affidavit as to what was said by the juror may not be used to impeach the verdict.

Finally, Adams questions the sufficiency of the evidence supporting the verdicts of guilty on both robbery and conspiracy. This Court may neither weigh evidence nor judge the credibility of witnesses, and will consider only the evidence and reasonable inferences therefrom which support the verdicts. *Polk v. State* (1984), Ind., 467 N.E.2d 666, 668.

---

**4.** Adams also refers to this as a denial of the right to remain silent.

**5.** In preliminary instructions, the jurors were admonished not to make any decision until they had heard all evidence, final instructions, and had retired to the jury room to deliberate.

Although there was conflicting evidence as to whether Adams participated in the robbery, Thornbury testified that Adams was the gunman. As noted above, Thornbury viewed the perpetrator for several minutes, in good light, from a distance of about one and one half feet. The jury was presented with sufficient evidence to conclude beyond a reasonable doubt that Adams was guilty of robbery.

In order to prove conspiracy, the State must show an agreement to commit a felony, with intent to commit the felony and an overt act in furtherance of the agreement. *Ridgeway v. State* (1981), Ind.App., 422 N.E.2d 410, 414. The law does not require a formal agreement and existence of the agreement may be inferred from conduct of the parties or established through circumstantial evidence.

The State refers to evidence that the co-defendants arrived in a truck owned by one defendant but licensed to a co-defendant, that one co-defendant came into the store and stood behind the other after the robbery commenced, and that the two fled the scene in the same truck. The evidence that the co-defendants acted in concert could support an inference that they acted by agreement. The conspiracy charge is supported by sufficient evidence.

The convictions against Adams are affirmed.

Affirmed.

STATON, P.J., and GARRARD, J., concur.