**Brian HOUCHIN, Appellant,**

v.

**STATE of Indiana, Appellee.**

No. 45S00–8909–CR–671.

Supreme Court of Indiana.

Nov. 25, 1991.

James R. Bielefeld, Crown Point, for appellant.

Linley E. Pearson, Atty. Gen., Geoff Davis, Deputy Atty. Gen., Indianapolis, for appellee.

KRAHULIK, Justice.

Appellant, Brian Houchin, was convicted by jury for the murder of a bank employee during a robbery. The jury recommended against the death penalty and he was sentenced to 58 years. This appeal is before us pursuant to Indiana Appellate Rule 4(A)(7).

The record reveals that in October 1988, Houchin, then 16 years old, met with Larry Allen and Joseph Hallock and planned to rob a bank. On the morning of October 18, Hallock and Allen met Houchin at his home, and the three left in Allen's car. They drove to the Mercantile Bank in Hammond, Indiana. Donning rubber gloves and nylon stocking masks, the three entered the bank. Hallock held a sawed-off shotgun at the security guard while Houchin removed the guard's loaded revolver. Meanwhile, Allen entered the teller's area and filled a pillowcase with approximately $7,750 in cash and several checks. During the robbery, Houchin raised the guard's revolver and shot a teller once in the head, killing her. The robbery, which lasted approximately two minutes, ended as the three ran from the bank to Allen's car and drove away. They travelled to a pond near Calumet City, Illinois, and deposited some of their outer clothing, the guns, the spent shellcasing, rubber gloves, nylon stockings, and some papers from the bank into the pond. They divided the money and hid some in a wooded area nearby.

In this direct appeal, Houchin raises two issues:

(1) Whether a statement he gave to the police was obtained legally; and

(2) Whether an edited version of that statement which omitted references to his co-defendants was properly admitted.

### I. *Statement Was Legally Obtained.*

Houchin was taken into police custody at his family's home on the evening of October 20, 1988, and was transported with his father to the police station. There he signed a written statement in which he confessed to his own involvement in the murder and robbery and implicated Allen and Hallock. Houchin moved to suppress this statement on the grounds (a) that it was obtained as the result of an illegal arrest, (b) that the statement was not voluntary, because he was under the influence of drugs at the time it was made, and (c) that the *Miranda* warnings he received were deficient. The trial court admitted the statement after concluding that the statement was properly obtained. Houchin asserts error in that ruling.

The evidence at the suppression hearing and at trial relevant to the confession revealed that Houchin became a suspect in the robbery during the police investigation. On October 20, around midnight, Hammond police detective Myszak received a telephone call from Houchin's girlfriend, Tina Blue. Blue told Det. Myszak that during a telephone conversation, Houchin admitted having shot the teller during the bank robbery with Larry Allen and "Joe". Houchin also reportedly told Blue that he had ingested drugs in an effort to overdose, and announced that he intended to go to her house. She was concerned because Houchin had been in her home earlier and had behaved violently. Police officers, one FBI

agent, and an ambulance were dispatched to Houchin's house. Other officers went to Blue's house.

Upon arrival at the Houchin house, officers observed a male lying on the sofa inside. They knocked and called Houchin's name, but received no response. Believing the individual on the couch was Houchin and concerned for his welfare, the officers entered the house, but discovered that the male on the sofa was not Houchin. They conducted a cursory search through the home, but were unable to locate Houchin. At this time, Houchin's brother told the officers that Houchin had admitted being involved in the bank robbery with "Joe and Larry."

Houchin's family indicated that he might be at Blue's house, but police did not find him there either. The officers then returned to Houchin's home and observed him standing inside. The officers announced their presence and identified themselves. Houchin gestured for them to enter the house. The officers asked Houchin about taking the pills, and Houchin replied that he felt fine. He refused medical assistance. Houchin was then informed by the officers that they wanted to speak with him and his father at the police station. Neither officer asked any questions about the bank robbery. Houchin spontaneously asked whether he would receive the electric chair and whether the police had apprehended "Larry and Joe." Houchin was warned by the officers not to say anything until they arrived at the station.

Houchin was transported to the hospital where he was offered, but refused, medical assistance. He was then taken to the Hammond Police Station where he and his father received *Miranda* warnings and were allowed to confer privately. Houchin and his father signed a waiver of rights form. Houchin gave a statement admitting robbing the bank with Allen and Hallock and admitting his role in the killing.

## A. Illegal Arrest.

■ Houchin asserts that his statement is the product of an illegal arrest because the officers did not have probable cause to perform a warrantless search of his home for him on their first visit to the house. Although a confession obtained through a custodial interrogation after an illegal arrest is generally inadmissible, *Brown v. State* (1987), Ind., 503 N.E.2d 405, 407, Houchin expressly advised the trial court at the hearing on the motion to suppress that the first police visit to the house was irrelevant, and this issue was not raised by Houchin when the statement was offered into evidence at trial. Accordingly, this argument has been waived. *Thomas v. State* (1983), Ind., 443 N.E.2d 1197, 1200.

■ Houchin argues that the second entry of the police into his home was also illegal because it was a continuation of the initial entry. At the suppression hearing, trial counsel specifically waived this argument. Moreover, the trial court concluded that the entry was consensual because Houchin invited the officers in. A valid consent obviates the warrant requirement. *Morgan v. State* (1989), Ind., 544 N.E.2d 143, 147. Houchin also argues that the entry was illegal because the officers did not have probable cause to enter. In view of Houchin's consent, this argument is of no moment. We find no error in the trial court's determination that the second entry into the Houchin home was legal. Therefore, this confession was not inadmissible because it was obtained as a result of an unlawful search or seizure. Implied consent to enter may be given by word or deed. *Harper v. State* (1985), Ind., 474 N.E.2d 508.

## B. Miranda Warnings.

■ Houchin argues that the *Miranda* warnings given him were not sufficient to apprise him clearly that he had the right to request an attorney to be furnished to him at no cost prior to any questioning.[1] Spe-

1. Houchin signed a *Miranda* Waiver Form which read, in pertinent part:
   1. Before making this statement, I was advised that I have the right to remain silent and that anything I might say may or will be used against me in a court of law.
   2. That I have the right to consult with an attorney of my choice before saying anything,

cifically, Houchin claims that warning no. 5 is equivocal, taken in conjunction with the other advisements, because it refers to an attorney which will be furnished, rather than an attorney of the defendant's own choice. Houchin has waived his argument relating to the sufficiency of the *Miranda* warnings because he did not raise any objection on these grounds at the pre-trial suppression hearing or when the statement was offered into evidence at trial. *Brown*, 503 N.E.2d at 409; *Thomas*, 443 N.E.2d at 1200.

■ Even if Houchin had not waived this argument, however, his assertion would be unavailing. An advisement of *Miranda* rights identical to the one here, was approved by this Court in *Sotelo v. State* (1976), 264 Ind. 298, 342 N.E.2d 844, where we held that the advisement was not ambiguous or misleading concerning the right to confer with private or pauper counsel before interrogation. Here, where Houchin initialed each of the five paragraphs of the *Miranda* advisement, where the detective read each of the advisements to Houchin and his father, allowed Houchin to read them, and allowed Houchin and his father time to confer privately before Houchin signed the form, we hold that Houchin was adequately advised of his right to counsel.

### C. Voluntariness of Statement.

■ Houchin next claims that the confession was not made voluntarily, intelligently and knowingly because he was under the influence of drugs at the time the statement was given.

■ It is well-established that the State has the burden of proving beyond a reasonable doubt that a defendant voluntarily and intelligently waived his right to remain silent. In reviewing the trial court's ruling in favor of the State on this issue, where the evidence is conflicting, we consider only the evidence which supports the ruling along with any unrefuted evidence in the defendant's favor. *Thomas*, 443 N.E.2d at 1199. A signed waiver is not conclusive evidence of a knowing, intelligent and voluntary waiver, *Dickerson v. State* (1972), 257 Ind. 562, 570, 276 N.E.2d 845, 849; we also consider the surrounding circumstances. *Grey v. State* (1980), 273 Ind. 439, 444, 404 N.E.2d 1348, 1351. "The circumstances to be considered include whether the confession was freely self-determined, the product of a rational intellect and free will, without compulsion or inducement of any sort." *Gibson v. State* (1987), Ind., 515 N.E.2d 492, 494.

■ When a defendant claims he was under the influence of drugs at the time he made a statement, the degree of his mental impairment is of critical importance. *Gregory v. State* (1989), Ind., 540 N.E.2d 585, 592. This Court has long held that voluntary intoxication does not necessarily establish that a confession was not given knowingly, intelligently or voluntarily, whether the intoxication was a result of alcohol, *Williams v. State* (1986), Ind., 489 N.E.2d 53, 56, some other drug, *Gregory v. State* (1989), Ind., 540 N.E.2d 585, 592, or a combination of both. *Bean v. State* (1978), 267 Ind. 528, 371 N.E.2d 713, 716.

This Court has used the term "unconscious" to describe the intoxication-induced mental impairment required to render a statement involuntary. We find the first use of the term in *Eiffe v. State:*

> It is only when an accused is so drunk as to render him unconscious of what he is saying or producing a state of mania that

5. That if I cannot hire an attorney, one will be provided for me.
6. I have read the foregoing statement of my rights and I am fully aware of the said rights. I do not desire the services of any attorney at this time and before proceeding with the making of any statement or during the course of any conversation with any police officers, and hereby waive said right.

and that an attorney may be present while I am making any statement or throughout the course of any conversation with any police officer if I so choose.
3. That I can stop and request an attorney at any time during the course of taking any statement or during the course of any such conversations.
4. That in the course of any conversation I can refuse to answer any further questions and remain silent, thereby terminating the conversation.

the law will deem his confession incompetent. Intoxication of a lesser degree is for a jury to consider in determining the weight to give the confession.

(1948), 226 Ind. 57, 63, 77 N.E.2d 750, 753. Its use has continued since. *See, e.g., Gregory,* 540 N.E.2d at 592.

■ To the extent that the use of the word "unconscious" might suggest a standard which focuses on something other than whether the person giving the statement acted with a rational mind and without coercion, we reject its use. Instead, we look to the totality of the circumstances to determine whether the consumption of alcohol or other drugs so affected the person giving the statement that the person was deprived of his free and independent will such that the statement was the product of an irrational mind or coercion. Intoxication to a lesser degree goes only to the weight to be given to the statement and not its admissibility. *See, Gregory,* 540 N.E.2d at 592; *Williams,* 489 N.E.2d at 56. Even where evidence is uncontradicted that a defendant was under the influence of drugs at the time of police interrogation, other evidence may be sufficient to prove that a knowing and intelligent waiver of rights occurred or that a resulting statement was made voluntarily. *Riley v. State* (1987), Ind., 506 N.E.2d 476, 480.

At the hearing on the motion to suppress, Houchin presented evidence that he had smoked two marijuana cigarettes and had ingested LSD, Librium, and a cough syrup containing codiene in the hours before giving his statement to the police. Other evidence revealed that before being transported from his house to the police station, Houchin told police officers and an emergency medical technician that the effects of the drugs had worn off and that he felt fine. The officers testified that during the 15–minute period they spent with Houchin at his home, they noticed no signs of intoxication. Houchin was able to walk without assistance and he spoke normally. The EMT noted Houchin was conscious, alert and "seemed to be very reasonable." Houchin displayed an awareness of his situation by asking the police officer whether he was going to get the electric chair. After a physical examination, Houchin expressed his desire to proceed with the interview at the police station. During the interview, the officers observed that Houchin seemed lucid and well coordinated. His speech was not impaired. He was able to smoke cigarettes and walk without assistance. Several times during the giving of the statement he stood up and acted out demonstrations of his movements during the robbery. Houchin was cooperative during the interview, and drew a map of the pond where the guns were discarded. After the statement was completed, Houchin made substantive and typographical corrections to the typed text. This evidence amply illustrates that Houchin was not so intoxicated that he was unable to exercise his free and independent will in giving his statement to the police. The trial court did not err in determining that the statement was given voluntarily. *Russelburg v. State* (1988), Ind., 529 N.E.2d 1193, 1195. Accordingly, we conclude that Houchin's statement was not obtained illegally.

II. *Admission of Edited Confession.*

■ Houchin claims that the trial court erred in admitting an edited version of his confession because the admission impinged on his Fifth Amendment right not to testify.

Houchin, Allen and Hallock were tried together. Motions for separate trials filed by Allen and Hallock were denied. An edited version of Houchin's statement, which omitted all references to Allen's and Hallock's participation, was admitted into evidence. Houchin objected to the admission on the grounds that the edited version of the statement gave the jury the impression that it was the complete statement and that Houchin was the sole participant in the crime. Houchin claims that as a result he was forced to testify at trial so the jury would know the entire story and that, because his testimony implicated his co-defendants but the edited confession did not, he appeared evasive before the jury.

In *Bruton v. United States* (1968), 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476, the Supreme Court held that where two or more defendants are tried jointly, a pretrial confession of one implicating the others is not admissible against the others if the declarant is not available for cross ex-

amination at trial. The Court reasoned that without such a rule, an accused could not exercise his right to confront and cross examine his accusers, in this case the out-of-court declarant, in violation of the Sixth Amendment. *Ind.Code* § 35–34–1–11 codifies the *Bruton* rule.[2]

We do not agree that the use of the redacted statement compelled Houchin to testify. There was other evidence admitted at trial incriminating Houchin, including his request to borrow a gun from his cousin so he could rob a bank with the other two defendants, his statement to a cousin that the other two had attempted to measure police response time to a bomb threat at a bank, and his identification by a witness as one of the three persons seen running from the bank at the time of the robbery. Where the State's evidence is strong, the defendant may be faced with a dilemma demanding him to choose between complete silence and presenting a defense, but such a dilemma has never been thought an invasion of the privilege against self-incrimination. *Williams v. Florida* (1970), 399 U.S. 78, 83–84, 90 S.Ct. 1893, 1897, 26 L.Ed.2d 446, 452.

Moreover, we fail to see how admission of the redacted statement prejudiced Houchin. In whatever form admitted, the statement was obviously incriminating to Houchin. Any prejudice to him would not be cured by admission of the complete statement.

### CONCLUSION

For the reasons stated above, we affirm the conviction and sentence in all respects.

SHEPARD, C.J., and DeBRULER, GIVAN and DICKSON, JJ., concur.

---

2. Whenever two (2) or more defendants have been joined for trial in the same indictment or information and one (1) or more defendants move for a separate trial because another defendant has made an out-of-court statement which makes reference to the moving defendant but is not admissible as evidence against him, the court shall require the prosecutor to elect:

(1) a joint trial at which the statement is not admitted into evidence;
(2) a joint trial at which the statement is admitted into evidence only after all references to the moving defendant have been effectively deleted; or
(3) a separate trial for the moving defendant. *Ind.Code* § 35–34–1–11(b).