**Damien Ray FAYSON, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 45S00–9903–CR–189.

Supreme Court of Indiana.

April 5, 2000.

Jeff Schlesinger, Crown Point, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Randi E. Froug, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

BOEHM, Justice.

Damien Ray Fayson was convicted of murder and sentenced to sixty years imprisonment. In this direct appeal, he contends that the trial court violated his constitutional rights established in *Bruton v. United States*, and Indiana Code § 35–34–1–11(b). He also contends that the trial court abused its discretion by permitting him to be cross-examined outside the scope of his direct examination. We affirm the judgment of the trial court.

**Factual and Procedural Background**

Early on the morning of August 9, 1998, Brandon Ford and Jermaine Lowe were sitting outside the home of Yakkei Wright, Fayson's girlfriend. Ford had dated Wright during the spring of that year. According to Jermaine, Fayson and a friend drove up to the house and Fayson went inside and returned with a nine millimeter gun. An argument broke out between Fayson and Ford but Jermaine believed the dispute had been settled and turned his attention to a videogame being played in the house. Jermaine then heard a shot. As Jermaine turned, he saw Fayson bring his hand back and Ford's body fall to the sidewalk. Fayson threatened to kill Jermaine if he told anyone of the shooting.

Jermaine shook Ford and concluded that he was dead. He then ran to his house and reported the shooting. Jermaine's older brother, James Lowe, went to the scene and spotted Ford's body in a field adjacent to Wright's house. Two minutes later, Fayson and a friend arrived at the field. Fayson told James that he had killed Ford and had to move the body again because the situation was going to "get too hot."

Jermaine reported to the police that Fayson had killed Ford. When an officer went to Wright's house to find Fayson, Wright stated that she did not know where Fayson was and had not seen him since seven o'clock that morning. She then gave police permission to search her house where they discovered Fayson asleep on a bed. A bullet casing and pool of blood were found in front of Wright's house.

An autopsy concluded that Ford died of a gunshot wound to the right eye. Stippling on Ford's skin indicated that the shot had been fired at close range. The State charged Fayson with murder and Wright with assisting a criminal. Fayson and Wright were tried together by a jury, convicted, and sentenced to sixty years and three years imprisonment, respectively.

## I. Claimed *Bruton* Violation

Fayson first claims that the trial court erred by failing to separate his trial from Wright's. In *Bruton v. United States*, 391 U.S. 123, 124–26, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), the United States Supreme Court held that in a joint trial, admission of one defendant's confession that implicates another defendant is a violation of the second defendant's Sixth Amendment right to confront witnesses. The confessing defendant cannot be required to take the stand, and the result is a denial of the other defendant's right to cross-examine. *See id.* at 137, 88 S.Ct. 1620. Citing this doctrine, Fayson moved for a severance both before and during the trial based on police testimony recounting the reasons Wright gave to the police for lying to them about Fayson's whereabouts. In ruling on the pretrial motion, the trial court concluded that Wright's statements did not incriminate Fayson, and therefore refused to sever the two trials. At trial, the court admitted testimony reporting Wright's statements over Fayson's objection, but admonished the jury that the testimony was to be considered only as to Wright's guilt, and was not to be considered as to Fayson. Fayson contends that this procedure violated *Bruton.*

█ On appeal the State correctly contends that a co-defendant's statements present a *Bruton* problem only if they "facially incriminate" another defendant. *See Richardson v. Marsh*, 481 U.S. 200, 211, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987); *Brock v. State*, 540 N.E.2d 1236, 1240 (Ind. 1989); *Smith v. State*, 516 N.E.2d 1055, 1060 (Ind.1987). However, we do not agree that the statements attributed to Wright failed to meet that standard.

Detective Michael Jackson testified that after Jermaine told him of the murder, he went to Wright's house in search of Fayson. Jackson testified that Wright told him that she did not know where Fayson was, but a search of the house revealed Fayson lying in bed. Jackson testified that he then asked Wright why she had lied and informed her of the penalties for "concealing information with regards to this homicide or hiding a suspect." Jackson testified that Wright responded that "she didn't want [Fayson] to go to jail."

█ Wright's explanation may not be as devastating to Fayson's case as the prototypical *Bruton* problem—a confession by a co-defendant that details the commission of the crime and the objecting defendant's role in it. Nonetheless, a reasonable juror could conclude that it implied that Wright had knowledge that Fayson had committed a crime. Indeed, when arguing in favor of the admissibility of Wright's statements at trial, the State claimed that Wright's statements "prove that she [Wright] knew or had good knowledge of the fact that [Fayson] had committed a felony." Fayson was charged with only one count—murder. The State itself contended that Wright's statement indicated that she knew Fayson had committed the murder. Under these circumstances, admitting this statement in the face of Wright's immunity from cross-examination violated *Bruton.*

█ Violations of the right of cross-examination do not require reversal if the State can show beyond a reasonable doubt that the error did not contribute to the verdict. *See Delaware v. Van Arsdall*, 475 U.S. 673, 684, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986) (citing *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)); *see also Smith v. State*, 721 N.E.2d 213, 219 (Ind.1999) ("[V]iolations of the right to cross-examine are subject to harmless-error analysis."). The same is

true of *Bruton* violations, which are a species of the denial of the right of cross-examination. *See Wright v. State,* 593 N.E.2d 1192, 1198 (Ind.1992); *Morrison v. State,* 516 N.E.2d 14, 15 (Ind.1987).

■ In this case, there was substantial other evidence that Fayson murdered Ford. Jermaine was an eyewitness to the crime and testified that he saw Fayson and Ford argue, that Fayson had a gun, and that he heard a shot immediately before Fayson's hand fell down and Ford's body fell to the ground. Jermaine's testimony is corroborated by the coroner's report of a single shot to the head fired at close range. The police found blood and a bullet casing at the place outside of Wright's house where Jermaine's version put the crime. Finally, and significantly, Fayson admitted to James that he shot Ford. In the face of this evidence, Wright's statement, given with an admonishment to the jury, did not contribute to Fayson's conviction and the *Bruton* violation was harmless.

## II. Indiana Code § 35–34–1–11(b)

Fayson also claims that the trial court abused its discretion in refusing separate trials under Indiana Code § 35–34–1–11(b), which provides:

> Whenever two (2) or more defendants have been joined for trial in the same indictment or information and one (1) or more defendants move for a separate trial because another defendant has made an out-of-court statement which makes reference to the moving defendant but is not admissible as evidence against him, the court shall require the prosecutor to elect: (1) a joint trial at which the statement is not admitted into evidence; (2) a joint trial at which the statement is admitted into evidence only after all references to the moving defendant have been effectively deleted; or (3) a separate trial for the moving defendant. In all other cases, upon motion of the defendant or the prosecutor, the court shall order a separate trial of de-

fendants whenever the court determines that a separate trial is necessary to protect a defendant's right to a speedy trial or is appropriate to promote a fair determination of the guilt or innocence of a defendant.

■ The decision whether to grant a motion for separate trials lies within the discretion of the trial court and will be reversed only for an abuse of that discretion. *See Averhart v. State,* 470 N.E.2d 666, 680 (Ind.1984); *see also Rouster v. State,* 705 N.E.2d 999, 1005 (Ind.1999); *Adams v. State,* 490 N.E.2d 346, 349 (Ind. Ct.App.1986). Indiana Code § 35–34–1–11(b) specifically requires the trial court to select one of the three statutory alternatives if a co-defendant's statement referring to another defendant is admitted at their joint trial. In this case, the trial court admitted Wright's statement referring to Fayson and did not require the State to elect one of the statute's three options. Failure to comply with the statutory mandate is an abuse of discretion. However, for the reasons discussed in Part I., this error was harmless. *See Taylor v. State,* 469 N.E.2d 735, 737 (Ind.1984) (violations of Ind.Code § 35–3.1–1–11 (now Ind.Code § 35–34–1–11) are subject to harmless error analysis).

## III. Scope of Cross–Examination

■ Fayson took the stand in his own defense. He contends that the trial court erred by allowing the State to cross-examine him beyond the scope of his direct examination. On direct examination, Fayson denied killing Ford and testified that on the evening of the murder, he went to the movies, then to his cousin's house, and finally to his sister's house where he slept the night. On cross-examination, the State asked Fayson how long he had known Ford, Jermaine, and Wright and asked Fayson for more details of the night of the crime, including the people he was with and at what time he left his cousin's house. The State then asked about Fayson's cousin. At this point, defense coun-

sel objected to the line of questioning as "beyond the scope." The trial court overruled the objection. The State continued its cross-examination asking Fayson whether his cousin had ever been to Wright's house:

Q[State]: Did [Fayson's cousin] ever go to Yakke[i] Wright's house before?

A[Fayson]: He been over there before.

Q: Did he go over there with you or –

A: You talking about during the time August 8th, August 9th?

Q: Any time had [your cousin] gone over to Yakke[i] Wright's house?

A: He came over there for me.

■ Indiana Evidence Rule 611 states that "[c]ross-examination should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness. The court may, in the exercise of discretion, permit inquiry into additional matters as if on direct examination." Trial court's rulings as to the scope of cross-examination will be reversed only for an abuse of discretion. *See Braswell v. State*, 550 N.E.2d 1280, 1282 (Ind.1990). The evidence claimed to be outside the scope established only that Fayson's cousin had been in Wright's house at some time, not necessarily the night of the murder. If error at all, this testimony did not affect Fayson's substantial rights and therefore, provides no basis for reversal. *See* Ind. Evidence Rule 103(a).

## Conclusion

The judgment of the trial court is affirmed.

SHEPARD, C.J., and DICKSON, SULLIVAN and RUCKER, JJ., concur.