## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 22 2016, 8:36 am

*Kevin S. Smith*

CLERK
of the supreme court,
court of appeals and
tax court

| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| Jeffrey E. Stratman<br>Aurora, Indiana | Gregory F. Zoeller<br>Attorney General of Indiana |
| | Tyler G. Banks<br>Deputy Attorney General<br>Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Lamocres A. Johnson,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | January 22, 2016<br><br>Court of Appeals Case No.<br>15A04-1501-CR-2<br><br>Appeal from the Dearborn Circuit Court<br><br>The Honorable James D. Humphrey, Judge<br><br>Trial Court Cause No.<br>15C01-1310-FB-42 |

**Mathias, Judge.**

[1]     Lamocres A. Johnson ("Johnson") was convicted in Dearborn Circuit Court of Class B felony dealing in a narcotic drug and Class B felony conspiracy to

commit dealing in a narcotic drug. The trial court vacated the conspiracy conviction on double jeopardy grounds and sentenced Johnson to sixteen years incarceration. On appeal, Johnson presents three issues, which we reorder and restate as:

I. Whether the State presented sufficient evidence to support Johnson's convictions;

II. Whether Johnson's convictions for both dealing in a narcotic drug and conspiracy to deal constitute double jeopardy; and

III. Whether the trial court abused its discretion in denying Johnson's motion to sever his trial from that of his co-defendant.

We affirm.

## Facts and Procedural History

On October 29, 2013, Johnson and Joshua Comer ("Comer") went to the home of Andrea White ("White") in Covington, Kentucky, near Cincinnati. White was a friend of Johnson but did not know Comer. Johnson introduced Comer to White and asked her if she could drive them to Indiana. Johnson and Comer needed White to drive because she had a valid driver's license. Johnson stated that they needed a ride "[t]o go hit a lick." Tr. p. 465. The two men offered White twenty dollars and some marijuana, but White was hesitant and declined. They then upped their offer to forty dollars and some marijuana, and White agreed.

Comer had been in contact with Nick Beetz ("Beetz") who, unbeknownst to Comer, Johnson, or White, was an undercover detective for the Lawrence

Police Department. Beetz had arranged to purchase heroin from Comer that afternoon at 2:30 p.m. Comer called Beetz at approximately 2:15 p.m. to arrange a location for the transaction, and Beetz chose the parking lot of a fast-food restaurant, which was already under police surveillance.

[5] Beetz arrived at the parking lot in his unmarked car at approximately 2:22 p.m. While he waited for Comer to arrive, he had several telephone conversations with Comer regarding when he would arrive. Two calls came from Comer's phone number, but a man other than Comer spoke with Beetz. This man told Beetz where he and Comer were in relation to the destination and their estimated time of arrival.

[6] White's vehicle arrived at the chosen destination a few minutes past three o'clock. White was driving, Johnson was in the front passenger seat, and Comer was in the rear seat behind Johnson. Beetz exited his vehicle and approached White's vehicle and handed Comer $600 in cash. Comer then handed Beetz what was later identified to be heroin, wrapped in a piece of paper. During the transaction, Beetz commented that Comer was late. Johnson told Beetz that it was Johnson's fault that they were late. After the transaction was complete, Beetz returned to his vehicle, and White drove away. Shortly thereafter, the police stopped White's car and arrested all three occupants.

[7] On October 31, 2013, the State filed an eleven-count charging information against Johnson, Comer, White, and another defendant. Four of these counts named Johnson: Count VI, Class B felony dealing in a narcotic drug; Count

VII, Class B felony conspiracy to deal in a narcotic drug; Count IX, Class A misdemeanor possession of marijuana; Count X, Class A misdemeanor possession of paraphernalia; and Count XI, Class D felony maintaining a common nuisance.

[8] A jury trial began on June 2, 2014. On the second day of trial, Johnson agreed to plead guilty to the misdemeanor charges but still contested the felony charges. The trial proceeded on the remaining charges, but ended in a mistrial on June 6, 2014.

[9] On August 21, 2014, prior to the beginning of the second trial, Johnson filed a motion to sever his trial from that of his co-defendants. The trial court held a hearing on this motion on September 22, 2014, and denied the motion by an order entered one week later.

[10] A second jury trial commenced on October 10, 2014. The jury found Johnson guilty of both Class B felony charges, i.e., dealing in a narcotic drug and conspiracy to deal in a narcotic drug. On December 4, 2014, the trial court entered its order sentencing Johnson to sixteen years on the conviction for Class B felony dealing in a narcotic drug. The court vacated the conviction for conspiracy to commit dealing in a narcotic drug "to avoid double jeopardy." Appellant's App. p. 468. The court also sentenced Johnson to concurrent terms of one year on each of the misdemeanor convictions. Johnson now appeals.

# I. Sufficiency of the Evidence

[11] Johnson claims that the State presented insufficient evidence to support his conviction for dealing in a narcotic drug. When reviewing claims of insufficient evidence, we apply our well-settled standard of review: we will neither reweigh the evidence nor judge the credibility of the witnesses; instead, we respect the exclusive province of the jury to weigh any conflicting evidence. *McHenry v. State*, 820 N.E.2d 124, 126 (Ind. 2005). We consider only the probative evidence and reasonable inferences supporting the verdict, and we will affirm if the probative evidence and reasonable inferences drawn therefrom could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt. *Id.*

[12] Johnson claims the evidence was insufficient to support his conviction for dealing in a narcotic drug. We note that the State argued at trial that Johnson was guilty under a theory of accomplice liability, both in the prosecution's closing argument and its jury instruction on accomplice liability. *See* Tr. p. 583 (prosecution's closing arguments); Appellant's App. p. 216 (jury instruction on accomplice liability). Thus, to convict Johnson, the State was required to prove that he knowingly or intentionally aided, induced, or caused another person (Comer) to deliver a narcotic drug (heroin). *See* Ind. Code § 35-48-4-1(a)(1)(C)

(defining the crime of dealing in a narcotic drug); Ind. Code § 35-41-2-4 (defining accomplice liability).[1]

[13]     Johnson argues that the State failed to prove the element of his intent. That is, he claims no evidence supports a reasonable inference that he knew Comer was travelling to Indiana to deliver heroin. He notes that White testified that she did not know that Comer planned to deliver heroin and posits that he therefore also had no knowledge. We disagree.

[14]     First, White's declared state of mind is not dispositive of Johnson's state of mind. Further, the jury was not required to credit White's testimony regarding even her personal lack of knowledge, let alone infer Johnson's state of mind from that testimony. More importantly, evidence from which the jury could reasonably infer that Johnson knew that White planned to deliver heroin was presented. Johnson brought Comer to White, who did not know Comer, to get a ride to Indiana to "hit a lick." Although this phrase is often associated with robbery or theft, *see Turner v. State*, 953 N.E.2d 1039, 1043-44 (Ind. 2011), testimony in the present case indicated that the term can more generically mean "to profit or to gain from some sort of illegal means." Tr. p. 470, 530; *see also United States v. Taylor*, 522 F.3d 731, 735 (7th Cir. 2008) (where witness testified that defendant told her that they were on their way to "hit a lick," which she explained meant that the defendant was going to sell drugs).

---

[1] We refer to the version of the statutes in effect at the time Johnson committed the offense.

[15] When White was hesitant, Johnson and Comer bribed her with both money and marijuana. Moreover, evidence that Johnson had spoken with White in the past regarding whether she used heroin was presented. In addition, the heroin delivered to Beetz was wrapped in paper similar to the marijuana found on Johnson's person when he was arrested. From all of this evidence, the jury could reasonably conclude that Johnson knew that Comer needed a ride to Indiana to deliver heroin.

[16] Furthermore, under the accomplice theory of liability, evidence from which the jury could conclude that Johnson aided Comer in delivering the heroin was presented. First, Johnson helped Comer secure their transportation to Indiana. White did not know Comer and insisted on Johnson coming with them on the trip. Also, Beetz testified that he spoke to another man on calls coming from Comer's phone while they were on their way to meet Beetz. This man informed Beetz of their location and when they expected to arrive. As Johnson was the only other man in the car, and Beetz testified that the man on the phone sounded like Johnson, the jury could reasonably conclude that Beetz spoke with Johnson on the phone. Based upon his securing White's help with the transportation, and his telephone conversations with Beetz, the jury could reasonably conclude that Johnson aided Comer in delivering the heroin to Beetz in Indiana.

[17] In short, the State presented evidence sufficient to support Johnson's conviction for Class B felony dealing in heroin under a theory of accomplice liability.

## II. Double Jeopardy

Johnson also claims that his convictions for dealing in a narcotic drug and conspiracy to commit dealing in a narcotic drug constitute double jeopardy. However, because the trial court explicitly vacated Johnson's conviction for conspiracy on double jeopardy grounds, Johnson's appellate claim of double jeopardy has no basis.[2] *See Kovats v. State*, 982 N.E.2d 409, 414-15 (Ind. Ct. App. 2013) (noting that vacating conviction constituting double jeopardy cures the double jeopardy problem).

## III. Separate Trial Motion

Lastly, Johnson argues that the trial court abused its discretion in denying his motion to sever his trial from that of his co-defendants. Johnson claims that he should have been tried separately because of the amount of evidence against his co-defendant Comer and because the admission of certain out-of-court statements by Comer violated his right to cross-examination protected by the Sixth Amendment.

Several defendants may be joined in a single prosecution. *Lee v. State*, 684 N.E.2d 1143, 1147 (Ind. 1997) (citing Ind. Code § 35-34-1-9). However, upon motion by the defendant, the trial court may order a separate trial "whenever

---

[2] Johnson recognizes that the trial court vacated his conviction for conspiracy on double jeopardy grounds but argues that if we overturn his conviction for dealing, he might still be subject to a conviction on the conspiracy charge. However, because we have held that sufficient evidence supports his conviction for dealing, this is not a concern.

the court determines that a separate trial is necessary to protect a defendant's right to a speedy trial or is appropriate to promote a fair determination of the guilt or innocence of a defendant." *Id.* (quoting Ind. Code § 35-34-1-11(b)). The trial court generally has discretion to grant or deny a motion for separate trials. *Id.* However, the trial court must grant severance of trials where defenses are mutually antagonistic and the acceptance of one defense precludes the acquittal of the other. *Id.* Upon appellate review, the trial court's decision is measured by what actually occurred at trial rather than what is alleged in the motion. *Id.*

[20] Johnson does not contend that his defense was mutually antagonistic to Comer's defense such that the trial court was required to grant his motion for separate trials. Instead, he argues that the "mountain" of direct evidence against Comer was improperly used by the State to implicate his own guilt simply based on his association with Comer and his presence at the scene. We disagree. As discussed above, evidence from which the jury could reasonably infer that Johnson knew that Comer was traveling to Indiana to sell heroin was presented, and the evidence also indicated that Comer aided in this transaction. The fact that Comer's guilt might have been easier to prove did not require the trial court to grant separate trials. *See Lee,* 684 N.E.2d at 1147 (noting that when one defendant implicates another it does not require separate trials and further noting that no constitutional right to be protected from damaging evidence exists) (citing *Castro v. State* 580 N.E2d 232, 235 (Ind. 1991)). Since the State argued that Johnson was guilty under a theory of aiding Comer, the evidence against Comer was directly relevant to the issue of Johnson's guilt.

The brunt of Johnson's argument is that the admission of Comer's out-of-court statements denied him the right to confront the witnesses against him because Comer exercised his right not to testify at trial. This, Johnson claims, prevented him from cross-examining Comer. Johnson argues that this runs afoul of both the Sixth Amendment, as interpreted in *Bruton v. United States,* 391 U.S. 123 (1968), and Indiana Code section 35-34-1-11.

In *Bruton*, the United States Supreme Court held that in a joint trial, admission of one defendant's confession that implicates another defendant is a violation of the second defendant's Sixth Amendment right to confront witnesses. *Fayson v. State*, 726 N.E.2d 292, 294 (Ind. 2000) (citing *Bruton*, 391 U.S. at 124-26). Because the confessing defendant cannot be required to take the stand, the result is a denial of the other defendant's right to cross-examine the confessing defendant. *Id*. (citing *Bruton*, 391 U.S. at 137). Subsequent case law has clarified that the *Bruton* rule is applicable only if the out-of-court statements by one defendant "facially incriminate" another defendant. *Id*. (citing *Richardson v. Marsh*, 481 U.S. 200, 211 (1987)).

Indiana Code section 35-34-1-11(b) provides:

> Whenever two (2) or more defendants have been joined for trial in the same indictment or information and one (1) or more defendants move for a separate trial because another defendant has made an out-of-court statement which makes reference to the moving defendant but is not admissible as evidence against him, the court shall require the prosecutor to elect:
>
> > (1) a joint trial at which the statement is not admitted into evidence;

(2) a joint trial at which the statement is admitted into evidence only after all references to the moving defendant have been effectively deleted; or

(3) a separate trial for the moving defendant.

This section has been described by our supreme court as a codification of the *Bruton* rule. *See Small v. State*, 736 N.E.2d 742, 745 n.5 (Ind. 2000); *Houchin v. State*, 581 N.E.2d 1228, 1233 (Ind. 1991).[3]

[24] Johnson claims that the admission of audiotapes made of Comer's telephone calls with Beetz constitutes a violation of the *Bruton* rule and Indiana Code section 35-34-1-11(b) because it was an out-of-court statement made by Comer about which he was unable to cross-examine Comer. We disagree.

[25] To be subject to the *Bruton* rule or Indiana Code section 35-34-1-11(b), the out-of-court statement must have referred to the defendant. *See Fayson*, 726 N.E.2d at 294 (citing *Richardson*, 481 U.S. at 211) (noting that to be subject to *Bruton* rule, the co-defendant's out-of-court statement must facially incriminate the defendant); I.C. § 35-34-1-11(b) (requiring that co-defendant's out-of-court statement "make[] reference to the moving defendant").

[26] Here, the out-of-court statements at issue—Comer's telephone calls with Beetz—did not make reference to Johnson at all, much less facially incriminate him. Accordingly, neither the *Bruton* rule or section 35-34-1-11(b) were

---

[3] *Houchin* was later overruled in part on other grounds by *Smith v. State*, 581 N.E.2d 1228, 1246 n.11 (Ind. 1997).

implicated, and the trial court did not abuse its discretion in denying Johnson's request for a separate trial.

## Conclusion

The State presented sufficient evidence to establish that Johnson knowingly aided Comer in the delivery of heroin. Because the trial court vacated Johnson's conviction for conspiracy to commit dealing, no double jeopardy issues are relevant to his conviction for dealing. Finally, the trial court did not abuse its discretion by denying Johnson's motion for a separate trial.

Affirmed.

Kirsch, J., and Brown, J., concur.