## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Dec 15 2016, 6:03 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Kristina J. Jacobucci
Newby, Lewis, Kaminski & Jones, LLP
LaPorte, Indiana

ATTORNEYS FOR APPELLEE

Gregory Zoeller
Attorney General of Indiana

Larry D. Allen
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Larry Crume,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

December 15, 2016

Court of Appeals Case No.
46A04-1510-CR-1805

Appeal from the LaPorte Superior Court

The Honorable Michael S. Bergerson, Judge

Trial Court Cause No.
46D01-1409-MR-263

**Mathias, Judge.**

[1]     Larry Crume ("Crume") was convicted in LaPorte Superior Court of murder, attempted murder, and conspiracy to commit murder. He was ordered to serve

an aggregate sentence of 120 years. Crume appeals his convictions and sentence and argues:

    I.    The trial court abused its discretion when it consolidated his trial with his co-defendant's trial;

    II.    The conspiracy charge should have been severed from the murder and attempted murder charges;

    III.    The evidence is insufficient to support his conspiracy conviction; and,

    IV.    His 120-year aggregate sentence is inappropriate in light of the nature of the offense and the character of the offender.

[2] We affirm.

## Facts and Procedural History

[3] On August 15, 2014, Crume, Johnny McSwain ("McSwain"), and Tyrone Stalling ("Stalling") approached a house in Michigan City, Indiana and asked whether Daniel Mallett ("Mallet") was home. Mallet's godmother lived in the home and her daughter told them that Mallet had just left. The trio went back across the street and sat on a brick wall to await Mallet's return.

[4] Mallet and Barry Williams ("Williams"), who had gone to a nearby gas station, returned shortly thereafter. McSwain, Stalling, and Crume confronted Mallet and Williams, and McSwain stated, "why you all making it hot over here, we can't make no money." Tr. p. 863. McSwain was upset that Mallet and Williams were attracting police attention to the area. Williams replied, "f*ck you all," and a physical confrontation ensued. *Id.* at 864.

McSwain punched Williams in the face. Williams fell to the ground and lost consciousness. Mallet attempted to punch McSwain and then ran toward his godmother's house. McSwain told Crume to shoot Mallet. Crume pulled a gun out of his pocket and fired several shots at Mallet. Mallet was almost struck by several bullets, but he was able to run into the house without being shot. Bullets hit the screen door and wall near the doorway as Mallet ran inside. Crume then walked over to Williams, who was still unconscious, and shot him in the head. Crume and McSwain then fled from the scene.

The next day, McSwain arranged for his girlfriend to bail his friend, Deanbra Martin ("Martin"), out of the LaPorte County Jail. They proceeded to McSwain's home where McSwain admitted that he told Crume to kill Williams. Crume admitted to shooting Williams and attempting to shoot Mallet. Crume told Martin that he had disposed of the gun used to murder Williams.

McSwain then asked Martin to kill Mallet so that Mallet could not talk to the police. McSwain, Martin, and Crume met more than once to form a plan to kill Mallet. McSwain told Martin they needed a gun, walkie-talkies, a handicap license plate, and a "low-low," i.e., an inconspicuous vehicle. Tr. pp. 1382, 1396.

On September 12, 2014, Martin was arrested on an unrelated charge. Martin told the arresting officers that he had information about Williams' murder. He also told them that McSwain and Crume were planning to kill Mallet. Martin

agreed to be a confidential informant and cooperate with the murder investigation.

[9] Five days after his arrest, Martin met with Crume and McSwain to discuss the plan to kill Mallet. McSwain said they needed to kill Mallet quickly, and Crume nodded in agreement.

[10] On September 19, 2014, McSwain and Crume decided they would establish an alibi by going to Walmart while Martin killed Mallet. McSwain gave Martin a handgun. After Martin received the handgun from McSwain, he turned it over to the police, who were monitoring Martin's conversation with McSwain. Later that night, as they had previously arranged, McSwain called Martin to tell him that he and Crume were at Walmart. The telephone call was the signal that Martin was supposed to use the gun provided by McSwain to kill Mallet. After calling Martin, McSwain and Crume walked around the Walmart store for a significant length of time. Upon leaving Walmart, they were arrested for Williams' murder.

[11] After McSwain and Crume were charged with murder, the State moved to consolidate their trials. Crume objected to the motion. On February 18, 2015, the trial court granted the State's motion to consolidate the trials and also allowed the State to amend the charging information to include Count II, Level 1 felony attempted murder and Count III, Level 2 felony conspiracy to commit murder. Crume asked the trial court to sever the conspiracy charge from the murder and attempted murder charges. The trial court set a hearing for the

motion. However, on that hearing date, Crume obtained new counsel and requested a continuance. Crume did not renew his motion to sever, and it was not heard or ruled on.

[12] Crume's and McSwain's jury trial was held from June 22 through July 1, 2015. Both were found guilty as charged.

[13] The trial court held Crume's sentencing hearing on September 23, 2015. The trial court found the following aggravating circumstances: Crume's history of criminal or delinquent behavior and that the harm, injury, loss or damage was significant and greater than the statutory elements of the offense. The court determined that the only mitigating circumstance was that imprisonment will result in undue hardship on Crume's dependent child. After concluding that the aggravating circumstances outweighed the mitigating circumstance, the trial court ordered Crume to serve a 120-year aggregate sentence: fifty-five years for murder, thirty-five years for attempted murder, and thirty years for conspiracy to commit murder, to be served consecutively. Crume now appeals.

## I. Consolidated Trials

[14] First, Crume argues that the trial court abused its discretion when it granted the State's motion to consolidate his trial with McSwain's trial.

> Several defendants may be joined in a single prosecution. However, upon a motion by defendant, the trial court may order a separate trial whenever the court determines that a separate trial is necessary to protect a defendant's right to a speedy trial or is appropriate to promote a fair determination of the guilt or innocence of a defendant. The trial court has discretion to grant

or deny a motion for separate trials. However, a trial court must grant severance of trials where there are mutually antagonistic defenses and the acceptance of one defense precludes the acquittal of the other. Upon review, the trial court's decision is measured by what actually occurred at trial rather than what is alleged in the motion.

*Lee v. State*, 684 N.E.2d 1143, 1147 (Ind. 1997) (internal citations and quotations omitted).

[15] Crume argues that the trial court abused its discretion when it consolidated his trial with McSwain's trial because "the evidence that was introduced against [McSwain] was substantially different than the evidence that the State introduced against [Crume], especially with respect to" the conspiracy charge. Appellant's Br. at 15. Crume observes that the evidence admitted at trial established that McSwain and Martin had conversations concerning the plan to kill Mallet, and the jury could have convicted Crume of the conspiracy charge solely because of his association with McSwain.[1] *Id.* at 15-16.

[16] Crume and McSwain were charged with the same offenses, they were accomplices, and the same evidence applied to each. Crume has not established

---

[1] Crume also argues that Martin's testimony was confusing because he often used the pronouns "he" or "we" when testifying about the plan to kill Mallet; therefore "the difficulty in creating a clear record regarding who was involved in each conversation relative" to the conspiracy charge "certainly could have created confusion in the mind of the jurors, such that consolidation of the trials was inappropriate." Appellant's Br. at 16. However, Crume does not cite to specific testimony in support of his argument, and we observe that the attorneys and trial court often requested that Martin use names instead of pronouns while testifying.

that their defenses were mutually antagonistic or that acceptance of McSwain's defense would have precluded Crume's acquittal.

[17] The trial court also appropriately instructed the jury that it should "give separate consideration to each Defendant. Each Defendant is entitled to have his case decided on the evidence and the law that applies to him. If any evidence is limited to one Defendant you must not consider it in deciding the case of any other Defendant[]." Appellant's App. p. 290.

[18] Importantly, there was also direct evidence of Crume's involvement in the charged offenses. Mallet testified concerning the altercation between McSwain, Crume, Williams, and Mallet, and that he saw Crume pull the gun out of his pocket that he used to shoot at Mallet and to kill Williams. Also, the confidential informant, Martin, testified that Crume admitted to shooting Williams and agreed to the plan to kill Mallet. Tr. pp. 1386, 1389.

[19] Finally, Crume argues that consolidating his trial with McSwain's created a substantial risk that the jury would rely on McSwain's incriminating statement to determine Crume's guilt in violation of *Bruton v. United States*, 391 U.S. 123, 126 (1968); *see also* I.C. § 35-34-1-11(b). Specifically, at trial Martin testified that McSwain nodded at Crume and told Crume to kill Williams. Tr. p. 1387.

[20] In *Bruton*, the Supreme Court addressed the issue of the admissibility of a co-defendant's pre-trial statement during a joint trial. The Court concluded a substantial risk exists that the jury might consider one co-defendant's incriminating pre-trial statement against the other codefendant as well. 391 U.S.

at 126. Because the former cannot be forced against his will to take the stand, the latter is denied his Sixth Amendment right to confront and cross-examine witnesses against him. *Id.* at 137. However, a co-defendant's statements violate *Bruton* only if they "facially incriminate" another defendant. *See Richardson v. Marsh*, 481 U.S. 200, 211 (1987); *Fayson v. State*, 726 N.E.2d 292, 294 (Ind. 2000). In addition, harmless error analysis applies to a *Bruton* violation claim. *Fayson*, 726 N.E.2d at 294-95.

[21] We agree that the challenged testimony implicated Crume in Williams' murder, although it proved only that McSwain directed Crume to shoot Williams and not that Crume actually did so. Moreover, the testimony was cumulative of Martin's and Mallet's testimony, i.e., that Crume admitted shooting Williams and that Mallet saw Crume pull a gun out of his pocket right before shots were fired. Therefore, Crume cannot establish that he was prejudiced by the admission of the challenged testimony.

[22] For all of these reasons, we conclude that the trial court did not abuse its discretion when it consolidated Crume's and McSwain's trials.

## II. Motion to Sever

[23] Crume also argues that the trial court erred when it failed to sever the conspiracy charge from the attempted murder and murder charges. Indiana Code Section 35-34-1-9(a) provides:

Two (2) or more offenses may be joined in the same indictment or information, with each offense stated in a separate count, when the offenses:

(1) are of the same or similar character, even if not part of a single scheme or plan; or

(2) are based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan.

[24] Indiana Code Section 35-34-1-11(a) governs severance of charges and states:

Whenever two (2) or more offenses have been joined for trial in the same indictment or information solely on the ground that they are of the same or similar character, the defendant shall have a right to a severance of the offenses. In all other cases the court, upon motion of the defendant or the prosecutor, shall grant a severance of offenses whenever the court determines that severance is appropriate to promote a fair determination of the defendant's guilt or innocence of each offense considering:

(1) the number of offenses charged;

(2) the complexity of the evidence to be offered; and

(3) whether the trier of fact will be able to distinguish the evidence and apply the law intelligently as to each offense.

[25] If offenses have been joined solely because they are of the same or similar character, a defendant is entitled to severance as a matter of right. *Pierce v. State*, 29 N.E.3d 1258, 1264 (Ind. 2015). However, if the offenses have been joined because the defendant's underlying acts are connected together, as in this case, we review a trial court's ruling on a severance motion for an abuse of discretion.

*Id*. *See also Robinson v. State*, 56 N.E.3d 652, 656 (Ind. Ct. App. 2016) (explaining that "[i]f the operative facts establish a pattern of activity beyond mere satisfaction of the statutory elements, such as that multiple crimes have been committed with a common victim, modus operandi, and motive, a defendant is not entitled to severance of charges as of right"). When we review discretionary denial of a motion to sever, "we consider whether severance was required in order to promote a fair determination of the defendant's guilt or innocence after reviewing subsections 1-3 of Indiana Code Section 35-34-1-11(a)." *Id*. at 656 (citing *Ben–Yisrayl v. State*, 690 N.E.2d 1141, 1145 (Ind.1997)).

[26]     Crume argues that the plan to kill Mallet was separate and distinct from Mallet's attempted murder and Williams' murder that occurred several weeks earlier. He also observes that the State presented separate witnesses and evidence to prove the conspiracy charge. Finally, Crume claims that "[b]y permitting evidence" concerning the conspiracy charge "to be introduced before the jury made a determination about [Crume's] guilt regarding Count I, Murder, and Count II, Attempted Murder, the trial court created a substantial risk of prejudice that the facts involved in Count III, Conspiracy, would sway the jury's perception of whether [Crume] was involved in the" murder and attempted murder counts.  Appellant's Br. at 19.

[27]     McSwain and Crume plotted to kill Mallet so that he would not talk to the police about Williams' murder and their attempt to kill him. Therefore, the underlying acts were undeniably connected together. *See, e.g., Smoote v. State*,

708 N.E.2d 1, 3 (Ind. 1999) (concluding that joinder of offenses was proper because the defendant killed the victim to ensure that the victim would not implicate him in another crime). Moreover, Crume was charged with three offenses, and while the record is voluminous, much of the evidence consisted of the testimony of the investigating detectives, eyewitnesses, and the confidential informant, and was not overly complex. Finally, because the evidence supporting each of the three offenses was distinct to each offense, it is reasonable to conclude that the jury was able to come to an intelligent decision regarding each charge. For all of these reasons, we conclude that the trial court acted within its discretion when it refused to sever the conspiracy charge from the murder and attempted murder charges.

## III. Sufficient Evidence that Crume Participated in the Conspiracy

[28] Crume also argues that the State failed to present sufficient evidence to prove that he participated in McSwain's plan to kill Mallet.

> When we review a claim challenging the sufficiency of the evidence we neither reweigh the evidence nor assess the credibility of the witnesses. Instead, we consider only the evidence and reasonable inferences drawn therefrom that support the verdict. And we will affirm the conviction if there is probative evidence from which a reasonable jury could have found the defendant guilty beyond a reasonable doubt.

*Suggs v. State*, 51 N.E.3d 1190, 1193 (Ind. 2016) (citing *Treadway v. State*, 924 N.E.2d 621, 639 (Ind. 2010)).

[29] To convict Crume of Level 2 felony conspiracy to commit murder, the State was required to prove that Crume conspired to commit murder

> when, with the intent to commit murder, [Crume] agreed with Johnny McSwain and a Confidential Source to knowingly or intentionally kill Daniel Mallet, and [Crume] or co-conspirator Johnny McSwain did perform one or more of the following overt acts in furtherance of the agreement, to wit: Johnny McSwain provided a firearm to the Confidential Source to kill Daniel Mallet; and/or [Crume] and co-conspirator Johnny McSwain traveled to the Walmart in LaPorte, Indiana to establish an alibi for the time of the murder.

Appellant's App. p. 117; *see also* Ind. Code §§ 35-41-5-2 (defining conspiracy); 35-42-1-1 (defining murder).

[30] Crume argues that the State failed to present sufficient evidence to prove that he agreed to commit the murder or that he performed an overt act in furtherance of the conspiracy. Crume claims the only evidence linking him to the conspiracy was Martin's testimony that Crume nodded his head in agreement while Martin and McSwain discussed the plot to kill Mallet. He also argues that his presence at Walmart "simply cannot constitute an overt act taken in furtherance of the conspiracy." Appellant's Br. at 24.

[31] Crume attempted to kill Mallet and killed Williams. Mallet saw Crume pull a gun out of his pocket just before Crume started shooting. Crume was present and nodded his head in agreement during two discussions McSwain had with Martin about killing Mallet. McSwain wanted Martin to kill Mallet so Mallet could not cooperate with the police concerning their investigation of Williams'

murder. McSwain provided a gun to Martin. McSwain and Martin agreed that the "signal" for Martin to kill Mallet would be a telephone call from McSwain, and McSwain would state that he and Crume were at Walmart. As previously arranged, McSwain made the phone call, and Crume and McSwain went to Walmart to establish their alibi for Mallet's murder. This evidence is sufficient to establish that Crume agreed to the plan to kill Mallet. *See Erkins v. State*, 13 N.E.3d 400, 407 (Ind. 2014) (stating that "[i]t is not necessary ... to present direct evidence of a formal express agreement. The agreement as well as the requisite guilty knowledge and intent may be inferred from circumstantial evidence alone, including overt acts of the parties in pursuance of the criminal act.").

[32] In addition, the State proved two overt acts in furtherance of the conspiracy. First, McSwain provided the gun to Martin. *See* Ind. Code § 35-41-5-2(b) ("The state must allege and prove that either the person or the person with whom he or she agreed performed an overt act in furtherance of the agreement."). Second, as they had agreed, Crume and McSwain went to Walmart to establish an alibi for the time frame during which Martin was supposed to murder Mallet. For all of these reasons, we affirm Crume's conviction for Level 2 conspiracy to commit murder.

## IV. Inappropriate Sentence

[33] Finally, Crume argues that his 120-year aggregate sentence is inappropriate in light of the nature of the offense and the character of the offender. Even if a trial court acts within its lawful discretion in imposing a sentence, Article 7, Sections

4 and 6 of the Indiana Constitution authorize independent appellate review and revision of that sentence. *Trainor v. State*, 950 N.E.2d 352, 355–56 (Ind. Ct. App. 2011). This authority is implemented via Indiana Appellate Rule 7(B), which provides that an appellate court "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." However, "we must and should exercise deference to a trial court's sentencing decision, both because Rule 7(B) requires us to give 'due consideration' to that decision and because we understand and recognize the unique perspective a trial court brings to its sentencing decisions." *Id*. at 355-56.

[34] Although we have the power to review and revise sentences, "[the principal role of appellate review should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." *Fernbach v. State*, 954N.E.2d 1080, 1089 (Ind. Ct. App. 2011) (citing *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008)). We also "focus on the forest—the aggregate sentence—rather than the trees—consecutive or concurrent, number of counts, or length of the sentence on any individual count." *Cardwell*, 895 N.E.2d at 1225. Whether a sentence is inappropriate ultimately turns on the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case. *Id*. at 1224. The burden is on the defendant to persuade us that his

sentence is inappropriate. *Trainor*, 950 N.E.2d at 356 (citing *Reid v. State*, 876 N.E.2d 1114, 1116 (Ind. 2007)).

[35]   Crume was ordered to serve an aggregate 120-year sentence for his three convictions. He was ordered to serve consecutive terms of the advisory fifty-five years for murder,[2] a sentence five years over the advisory of thirty-five years for attempted murder,[3] and a maximum thirty years for conspiracy to commit murder.[4]

[36]   Concerning the nature of his offenses, we observe that Crume murdered Williams by shooting the unconscious Williams in the face. Although there is no evidence that Williams suffered any pain from the shooting, Crume callously shot a man who had no means of defending himself. Crume also shot at Mallet as he ran into a nearby house, subjecting both Mallet and the occupants of the residence to the possibility of injury or death. Several bullets struck the house near the front door. Finally, Crume conspired with McSwain and Martin to kill Mallet so that Mallet could not cooperate with the police investigation of Williams' murder and Mallet's attempted murder.

---

[2] *See* Ind. Code § 35-50-2-3 (establishing that a person convicted of murder "shall be imprisoned for a fixed term of between forty-five (45) years and sixty-five (65) years, with the advisory sentence being fifty-five (55) years").

[3] *See* Ind. Code § 35-50-2-4 (establishing that a person convicted of a Level 1 felony "shall be imprisoned for a fixed term of between twenty (20) years and forty (40) years, with the advisory sentence being thirty (30) years").

[4] *See* Ind. Code § 35-50-2-5 (establishing that a person convicted of a Level 2 felony "shall be imprisoned for a fixed term of between ten (10) years and thirty (30) years, with the advisory sentence being seventeen and one-half (17 ½) years").

[37] Turning to the character of the offender, we observe that Crume has one young dependent. His own childhood was difficult, and he did not have a stable home life. Crume graduated from high school and attended some college courses. However, he was not employed when he was arrested in this case.

[38] Moreover, Crume, who was twenty-four years old when he committed these offenses, has not lived a law-abiding life. Crume has a juvenile adjudication for arson, a Class D felony if committed by an adult. He was convicted of misdemeanor battery in 2009 and violated his probation in that case. He was convicted of possession of marijuana in Texas, where he has an active warrant on a motion to revoke probation. Crume also pleaded guilty to two counts of A misdemeanor conversion. Finally, on the date of his sentencing hearing, he had pending charges for felony possession of a sawed-off shotgun and criminal gang activity, as well as misdemeanor charges of carrying a handgun without a permit, public intoxication, and battery resulting in bodily injury.

[39] Crume's criminal history and his callous disregard for human life leads us to conclude that his aggregate 120-year sentence is not inappropriate in light of the nature of his offenses and the character of the offender.

## Conclusion

[40] The trial court did not err when it consolidated Crume's trial with McSwain's trial and when it failed to sever the conspiracy charge from the murder and attempted murder charges. The evidence is sufficient to support Crume's

conspiracy conviction, and his 120-year aggregate sentence is not inappropriate in light of the nature of his offenses and the character of the offender.

[41] Affirmed.

Robb, J., and Brown, J., concur.